Michael DeWOODY and Paul DeWoody, Individually and Derivatively on behalf of Cable Advertising Networks, Inc., Appellant,

v.

Mark RIPPLEY, James Masters, Douglas Fugate, Michael Dunlap, Marilyn Denise Dunlap, and Cable Advertising Networks, Inc., Appellee.

No. 2–96–164–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 29, 1997.

Rehearing Overruled Oct. 2, 1997.

Steven D. Goldston, Pace & Goldston, Shannon B. Schuster, Calhoun & Stacy, P.L.L.C., Dallas, for Appellant.

Mark C. Hill, Haynes and Boone, L.L.P., Dallas, Robert J. Myers, Robert John Meyers & Associates, San Antonio, for Appellee.

Before DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION

LIVINGSTON, Justice.

### I. Introduction

Appellants, Michael DeWoody and Paul DeWoody (the "DeWoodys") individually and derivatively on behalf of Cable Advertising Networks, Inc. ("CAN") challenge the trial court's entry of a summary judgment in favor of appellees, the defendants in the court below. In January 1996, the trial court entered a summary judgment in favor of the appellees finding no disputed issues of material fact and determining that the appellees were entitled to judgment as a matter of law on all of the plaintiffs' individual and derivative claims.

Because appellees' motion for summary judgment failed to address the new claims added in the DeWoodys' amended petition and also failed to conclusively demonstrate appellees' entitlement to judgment as a matter of law on all claims addressed, we reverse the trial court's grant of summary judgment and remand for trial on the merits.

### II. Factual Background

#### A. The Leaver Suit

In early 1991, the DeWoodys, along with appellees, James Masters, Mark Rippley, and Douglas Fugate owned 100% of CAN's stock. Michael DeWoody owned 20%, and his father, Paul DeWoody, owned 5%. Masters, Rippley and Fugate each owned 25%. Michael DeWoody, Masters, Rippley, and Fugate were also CAN's employees, officers, and directors.

In the fall of 1991, Jonathan Leaver purportedly purchased a minority interest in CAN. Over the next year, Leaver, Masters, Rippley, and Fugate allegedly conspired to fraudulently divest the DeWoodys of their interest in CAN. The conspirators were allegedly aided in their plan by the DeWoodys' accountant, Michael Dunlap, who supplied Leaver with confidential information about the DeWoodys' financial difficulties.

In July 1992, the DeWoodys entered into a contract with Leaver to sell him two million of their shares in CAN for $210,000, an amount substantially below the market value of the stock. This purchase would have given Leaver a controlling interest in CAN. After signing the agreement, but before purchasing the DeWoodys' stock, Leaver asked Masters, Rippley, and Fugate to issue three million shares of CAN stock for $210,000 to Celeb Capital Corporation ("Celeb"), a company controlled by Leaver. At an August 6, 1992 CAN board meeting, Masters, Rippley and Fugate voted in favor of the issuance. Michael DeWoody opposed the stock issuance to no avail. Leaver now purportedly owned a controlling interest in CAN.

The next morning, Michael DeWoody arrived at his office to find a resignation letter from Dunlap stating that he had accepted a job offer from Leaver to serve as CAN's Chief Financial Officer. Michael DeWoody was then removed as a CAN director at a shareholders' meeting on August 17, 1992. After the August 17 meeting, the DeWoodys filed suit individually and derivatively against Leaver and appellees alleging that they conspired to take over CAN and to destroy the DeWoodys' interest in it (the "Leaver Suit"). During this litigation, Leaver and appellees were all originally represented by the law firm of Hopkins & Sutter.

After filing the Leaver Suit, the DeWoodys allege they became the targets of retaliatory litigation and corporate maneuvering designed to financially cripple them. The DeWoodys contend that Leaver and appellees filed frivolous counterclaims against them in the Leaver Suit, knowing the claims to be without merit. On October 9, 1992, Leaver filed suit against Pendragon Oil Company, a general partnership owned by the DeWoodys, in the Southern District of New York alleging misrepresentation in connection with two oil projects. After the DeWoodys successfully obtained a transfer of this suit to Texas, it was dismissed with prejudice. In late 1992 or early 1993, after having reincorporated CAN in Delaware, Leaver and appellees approved and instituted a reverse stock split, reducing the DeWoodys' stock ownership to below one share; and giving CAN the authority to acquire the DeWoodys' stock for $80,000, an amount drastically below the fair

market value.[1] Leaver and appellees then approved the filing of a suit by CAN against the DeWoodys in Delaware in an attempt to sequester the DeWoodys' stock. This suit was latter dismissed by the Delaware court *sua sponte.* Finally, a 1993 attempt to place CAN into bankruptcy in New York was dismissed as a bad faith filing.[2]

After eight months of contesting the bankruptcy filing, the Leaver Suit continued. Appellees terminated Hopkins & Sutter and asserted individual and derivative claims against Hopkins & Sutter and Leaver. On the advice of new counsel, appellees gave the DeWoodys their Hopkins & Sutter legal file. The DeWoodys then amended their pleadings to include individual and derivative claims on behalf of CAN against Hopkins & Sutter.

On May 27, 1993, the DeWoodys settled their individual claims against Dunlap. In a document entitled "Covenant Not to Execute," Dunlap agreed to pay the DeWoodys 50% of the proceeds from any claims he might have against Hopkins & Sutter should a judgment be obtained against him in the Leaver Suit. Additionally, the DeWoodys agreed to indemnify Dunlap to the extent that any judgment obtained against him exceeded 50% of what he collected as a result of his claims against Hopkins & Sutter. In late 1993, at Dunlap's request, the DeWoodys executed an "Agreed Judgment" against Dunlap for 1.5 million dollars ostensibly to assist Dunlap in documenting his damages in his trial against Hopkins & Sutter. The DeWoodys allege that Dunlap's lawyer later asked them to release the agreed judgment verifying that the release would not impact their original Covenant Not to Execute and assignment of 50% of the proceeds.

1. Appellees placed their stock in a newly formed holding company to protect it from the effects of the stock split. Dunlap then allegedly prepared grossly misleading financial statements for CAN to counter the DeWoodys' efforts to contest the valuation of the stock. Appellees later admitted that they knew that the DeWoodys' stock was worth several million dollars at the time.

2. The DeWoodys contend that they were forced to sell millions of dollars of oil properties at a fraction of their value to thwart these attempts to financially crush them. Additionally, the De-

The trial court appointed a receiver for CAN on May 6, 1994, and apparently vested him with the authority to pursue CAN's claims against other parties. The trial court later clarified its receivership order stating that the receiver was not obligated to pursue any claims on CAN's behalf. The trial court also enjoined the DeWoodys and appellees from interfering with the receiver's actions. Additionally, the trial court declared both CAN's September 1991 and August 1992 stock issuances to Leaver and Celeb void. The court reinstated the distribution of CAN stock to the pre-Leaver levels; Masters, Rippley and Fugate, 25% each; Michael DeWoody, 20%; and Paul DeWoody, 5%.

On July 20, 1994, the DeWoodys nonsuited all claims against Masters, Rippley, and Fugate without prejudice. The DeWoodys contend that they were fraudulently induced into nonsuiting Masters, Rippley, and Fugate after they concealed the full extent of their participation in the Leaver take-over scheme and assured the DeWoodys that their interest in CAN would be protected.

Because the DeWoodys and Masters, Rippley, and Fugate now had similar derivative claims pending against Hopkins & Sutter in the Leaver Suit, and they again collectively owned 100% of CAN's stock and were its sole directors, discussions began between the DeWoodys and Master, Rippley, and Fugate to determine how to bring CAN's claims directly. On October 25, 1994, at a CAN board of directors meeting, Masters, Rippley, and Fugate suggested that the DeWoodys nonsuit their derivative claims in the Leaver Suit. The ostensible purpose of this suggestion was to facilitate CAN's adoption of the derivative claims previously brought by Masters, Rippley, and Fugate.[3] The DeWoodys

Woodys contend that their business credit and reputation have been virtually destroyed. Although the DeWoodys concede that Leaver orchestrated this scheme to destroy them, they maintain that appellees bear "some responsibility" for the damages they incurred.

3. The DeWoodys' summary judgment evidence includes a transcript from this meeting. Michael DeWoody's overriding concern appears to have been that CAN's legitimate creditors be paid with the proceeds from any recovery from Hopkins & Sutter. Counsel for Masters, Rippley, and Fu-

contend that, based on the assurances made at this meeting, they nonsuited their derivative claims in the Leaver Suit on November 3, 1994.

With trial set to begin November 7, 1994, however, Hopkins & Sutter opposed the filing of CAN's direct claims in the Leaver Suit because discovery deadlines had expired. In an attempt to circumvent these discovery deadlines, Masters, Rippley, and Fugate proposed a resolution requiring unanimous approval before CAN could file claims in its own right against Hopkins & Sutter. They allegedly asked the DeWoodys to withhold their consent so the majority shareholders could pursue CAN's claims derivatively and thereby avoid the discovery roadblock. No vote was taken on this scheme at the meeting and the directors agreed to further investigate what course of action should be taken in regard to CAN's claims at a later date.

The DeWoodys then nonsuited their claims against CAN without prejudice to pursue their individual claims against Hopkins & Sutter and Leaver. On October 24, 1994, appellees obtained a severance of their "derivative" and individual claims against Hopkins & Sutter from the DeWoodys' remaining individual claims in the Leaver Suit.

In November 1994, the DeWoodys' trial began on their individual claims against Hopkins & Sutter and Leaver, who had since fled the country. The jury deadlocked and the DeWoodys entered into a settlement agreement with Hopkins & Sutter. For a monetary settlement of their individual claims, the DeWoodys agreed to assign to Hopkins & Sutter any proceeds "paid, transferred, or issued" to the DeWoodys as shareholders if CAN subsequently recovered from Hopkins & Sutter. A copy of the assignment was supplied to appellees.

At a shareholders' and directors' meeting on January 13, 1995, a resolution was again proposed requiring unanimous consent of the shareholders and directors before any suit could be brought by CAN. The resolution passed, and when a vote was taken on a motion for CAN to sue Hopkins & Sutter, Michael DeWoody abstained. The DeWoodys contend that they were not trying to get CAN to abandon its claims against Hopkins & Sutter, but were merely trying to facilitate the appellees' successful pursuit of those claims based on appellees' earlier representations about the discovery deadlines imposed by the trial court in the Leaver Suit.

The DeWoodys allege that it was not until January 1995 that they learned of the full extent of appellees' participation in Leaver's scheme to fraudulently obtain the DeWoodys' stock. Michael DeWoody contends that Masters apologized for cooperating with Leaver and admitted that he, Rippley, and Fugate knew what they were doing when they voted in favor of the Celeb issuance and in the subsequent actions they took. Nevertheless, the DeWoodys remained hopeful that CAN's claims would eventually be prosecuted.

Appellees' individual and "derivative" claims against Hopkins & Sutter went to trial in January 1995. After four weeks of trial, a mediation was scheduled. On March 10, 1995, appellees settled their individual and derivative claims against Hopkins & Sutter. The settlement included a complete release of any and all claims held by Masters, Rippley, Fugate, and Dunlap against Hopkins & Sutter. Masters, Rippley, and Fugate received approximately $10 million, out of which they paid Dunlap $650,000. The settlement also released Hopkins & Sutter from any and all claims held by CAN and was endorsed by Fugate in his representative capacity as secretary. The DeWoodys contend that CAN received nothing in return for the release.

### B. The DeWoodys' New Suit

On April 7, 1995, the DeWoodys filed the lawsuit now on appeal against Masters, Ripp-

gate assured Michael DeWoody that not only was a derivative suit procedurally improper given the consensus of opinion, but that if the DeWoodys agreed to nonsuit their derivative claims they could be "safe in the knowledge that the company still, when and if it is able to obtain counsel, has the ability to pursue those claims from a legal procedural standpoint in its own right ... to obtain benefits for the company to be used for the purposes of paying the companies creditors and, once that is accomplished, then to compensate the stockholders in the proportion in which they own stock in the company."

ley, Fugate, Dunlap, and CAN. Originally, the suit asserted a laundry list of torts against the individuals and CAN related to the DeWoodys' attempt to sell their stock to Leaver, the takeover attempt, and the related attempt to devalue CAN and thus the DeWoodys' stock.

The DeWoodys' claims against Dunlap principally asserted a breach of contract action for Dunlap's failure to comply with the May 27, 1993 settlement agreement to convey Dunlap's 50% interest in the Hopkins & Sutter settlement proceeds. The DeWoodys also alleged tortious claims against Dunlap in assisting Leaver and appellees in their CAN take-over attempt. Additionally, the De-Woodys' suit included derivative claims against all appellees for negligence and breach of fiduciary duties. Finally, the De-Woodys sought a declaration of the various rights and interests of all the parties.

### C. Appellees' Motion for Summary Judgment

In June 1995, appellees moved for summary judgment on all of the DeWoodys' claims. Appellees alleged several affirmative defenses against the DeWoodys' claims: judicial estoppel, judicial admissions, statute of limitations, res judicata, collateral estoppel, release and indemnification, waiver, estoppel and lack of standing to assert derivative claims.

The DeWoodys' filed their Second Amended Petition on December 1, 1995. Appellees' motion for summary judgment was not heard until December 19, 1995. No intervening objection to the amended pleading or amendment to the motion for summary judgment was filed by appellees.

### III. Discussion

### A. New Claims in the DeWoodys' Second Amended Petition not Addressed in Appellees Motion for Summary Judgment

The DeWoodys complain that the trial court erred in granting summary judgment on the new claims and causes of action al-

leged in their amended petition because appellees failed to amend their motion for summary judgment to expressly request relief on the new allegations. The new or additional claims not initially asserted in the DeWoodys' original petition and not addressed in appellees' motion for summary judgment are as follows:

Individual Claims against Masters, Rippley, Fugate and CAN:

▶ **conspiracy** to settle CAN's corporate claims for little or no monetary consideration by funneling money for Dunlap through Masters, Rippley and Fugate to avoid any payment obligations to the DeWoodys under the Dunlap Settlement Agreement;

▶ **tortious interference** with contractual relationship between the DeWoodys and the Dunlaps by interfering with the Dunlap Settlement Agreement;

▶ **breach of fiduciary duty** by voting in favor of Celeb issuance in an amount they knew to be far below market value of the stock, by voting in favor of CAN's frivolous suits against the De-Woodys, and by settling CAN's claims against Hopkins & Sutter for no money;

▶ **fraud and claims to establish a constructive trust** by virtue of material misrepresentations to the DeWoodys concerning how the settlement and resolution of the corporate claims would be made, and with respect to the original nonsuit pertaining to the appellee shareholders, material misrepresentations made to the DeWoodys and CAN, both of whom detrimentally relied on such statements when non-suiting their claims against the appellee shareholders, including claims of malice and intentional torts justifying a recover of exemplary damages;

Individual Claims against Dunlap [4]:

▶ **fraud** with respect to the entry of the $1.5 million consent judgment against Dunlap in favor of the DeWoodys and

---

**4.** The only claim that was asserted against Dunlap and his wife was the breach of contract claim. For the sake of simplicity, we will refer

to Michael Dunlap singularly throughout the remainder of this opinion.

Dunlap's misrepresentation as to his intent to split the proceeds and their reliance on same, including claims of malice and intentional torts justifying a recover of exemplary damages.

Appellees cite *Judwin Properties, Inc. v. Griggs & Harrison*, 911 S.W.2d 498 (Tex. App.—Houston [1st Dist.] 1995, no writ) as support for the proposition that their motion for summary judgment was broad enough to encompass all new claims in the DeWoodys' second amended petition.[5] Appellees contend that, as in *Judwin Properties*, the new claims asserted in the DeWoodys' second amended petition "arise out of and are based on the very same alleged actions and conduct" and thus "added nothing new to the case for consideration of the trial court."

In *Judwin Properties*, Griggs filed suit against Judwin to recover attorney's fees. *Judwin Properties, Inc.*, 911 S.W.2d at 500. Judwin filed a counterclaim that failed to expressly allege a specific cause of action. *Id.* at 503. Judwin's counterclaim merely contained factual allegations of damages that were, on their face, couched in tort, contract, and breach of fiduciary duty. *Id.* Griggs filed a motion for summary judgment against Judwin's "claim(s)" because the summary judgment proof conclusively resolved the issue of damages against Judwin. *Id.* at 501. Judwin then filed an amended counterclaim specifically pleading that Griggs's conduct constituted a breach of contract, breach of implied warranty, breach of fiduciary duty, negligence, and gross negligence. *Id.* at 501. Each of these causes of action, however, were based on the identical set of facts alleged in Judwin's original counterclaim. *Id.* Griggs did not amend its motion for summary judgment to specifically address each cause of action pled in Judwin's amended counterclaim. *Id.* The trial court granted Griggs's motion for summary judgment as to all causes of action in Judwin's amended counterclaim. *Id.*

On appeal, the Houston Court of Appeals held that the trial court did not err in granting Griggs's motion for summary judgment despite the motions failure to specifically address and seek relief on each of the causes of action asserted in Judwin's amended counterclaim.[6] The court reasoned that Griggs's motion for summary judgment "contemplated all causes of action set out in Judwin's amended counterclaim." *Id.* at 502.

We find *Judwin Properties* distinguishable from the instant case. In *Judwin Properties*, Judwin's amended counterclaim asserted claims based on an identical set of acts as were alleged in its original counterclaim. In contrast, the DeWoodys' amended petition contains new causes of action against appellees based on conduct not alleged in the original petition. Because the DeWoodys' amended petition asserts new causes of action based on facts not alleged in their original petition, we cannot say that the appellees' motion for summary judgment contemplated and embraced the additional claims in the amended petition.

■ Moreover, we disagree with *Judwin Properties* to the extent that it embraces the notion that a trial court may grant relief on a cause of action not expressly addressed in an applicant's motion for summary judgment. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678. "It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding." *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983); *see also Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993); *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex. 1993). Accordingly, the trial court erred in granting summary judgment on the causes of action, as listed above, not specifically addressed in appellees' motion for summary judgment.

---

5. Even if this argument is factually correct, appellees failed to raise this contention in their motion for summary judgment. Therefore, appellees may not raise this argument for the first time on appeal. *See* Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675 (Tex.1979).

6. The court did, however, reverse and remand the case for trial because there was a fact issue as to damages on Judwin's negligence and gross negligence causes of action. *Id.* at 508.

The summary judgment granted on the causes of action that were not addressed in appellees' motion for summary judgment are reversed and remanded to the trial court. Because the summary judgment order purports to be a final judgment disposing of all claims and parties, we will now examine the claims that were specifically addressed in appellees' motion for summary judgment under the appropriate summary judgment standard of review. *See Mafrige*, 866 S.W.2d at 592; *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 122 (Tex.App.—Houston [14th Dist.] 1994, no writ)

### B. Causes of Action Addressed in Appellees' Motion for Summary Judgment

The DeWoodys contend that the trial court erred in granting summary judgment on the claims addressed by appellees' motion for summary judgment because appellees failed to conclusively prove that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. After discussing the applicable standard of review, we will review the DeWoodys' complaint as it relates to the claims addressed in appellees' motion for summary judgment in the following general categories: (1) individual claims against Masters, Rippley, Fugate, and CAN; (2) individual claims against Dunlap; and (3) derivative claims on behalf of CAN against Masters, Rippley, Fugate, and Dunlap.

### 1. Standard of Review

■ On review of a trial court's grant of a summary judgment, the issue is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. A defendant who conclusively negates at least one of the essential elements of each of a plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex. 1990), and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the nonmovant to raise fact issues precluding summary judgment. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678. Although insufficient to establish a right to judgment as a matter of law, testimony from an interested witness submitted as controverting evidence by a nonmovant may raise a fact issue precluding summary judgment. *See* TEX.R. CIV. P. 166a(c); *see also McCord v. Avery*, 708 S.W.2d 954, 955 (Tex.App.—Fort Worth, 1986, no writ)

■ If the trial court fails to specify the grounds upon which it granted summary judgment, we will affirm the summary judgment if any theory expressly presented in the movant's motion for summary judgment is meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). When determining whether grounds for summary judgment were expressly presented, however, we will not consider grounds urged only in the briefs or in the summary judgment proof and not raised in the motion for summary judgment itself. *See McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 341 (Tex.1993).

### 2. Individual Claims against Masters, Rippley, Fugate, and CAN

The individual causes of action asserted in the DeWoodys' amended petition addressed by appellees' motion for summary judgment arise out of the DeWoodys attempt to sell their interest in CAN to Leaver. The DeWoodys alleged the following causes of action against Masters, Rippley, Fugate, and CAN: (1) conspiracy to force the DeWoodys into selling their interest in CAN, to diminish the DeWoodys' interest in CAN, and to coerce

and defraud the DeWoodys; (2) tortious interference with the DeWoody–Leaver contract; (3) breach of their fiduciary duties as officers and directors by voting to issue CAN stock to Celeb, by approving the reverse stock split and thereby substantially reducing the value of the DeWoodys' stock, by using attorneys selected by Leaver to structure the stock split, and by voting to have CAN pay the DeWoodys an amount grossly less than the true value of their stock; (4) breach of duty of good faith and fair dealing to the DeWoodys during the Leaver transaction; (5) fraud by attempting to force the DeWoodys out of CAN for little or no consideration, and by making false, material misrepresentations upon which the DeWoodys relied; (6) fraud in stock transactions by making false representations of past or existing facts; (7) constructive fraud with malice; (8) oppressive conduct by self-dealing, diluting stock values, and fraudulently structuring agreements to deprive the DeWoodys of their interest in CAN with flagrant disregard of the DeWoodys' rights as stockholders; (9) intentional infliction of emotional distress; and (10) negligence and gross negligence.

As to the above causes of action only, appellees moved for summary judgment on the grounds of (1) judicial estoppel, (2) judicial admissions, and (3) statute of limitations.[7] Because the trial court did not specify the grounds upon which it granted summary judgment, we will examine each in turn.

### (a) Judicial Estoppel

■■■ The doctrine of judicial estoppel bars a party who has made a sworn statement in a pleading, a deposition, oral testimony, or affidavits in a judicial proceeding from maintaining a contrary position in a subsequent proceeding. *See Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 294–95 (1956); *Goldman v. White Rose Distrib.* Co., 936 S.W.2d 393, 397 (Tex.App.—Fort Worth

1996, writ granted w.r.m.). The doctrine is based on public policy that prohibits a litigant from maintaining inconsistent positions in separate judicial proceedings. *See* Roger M. Baron & Melissa M. Martin, *The Application of Judicial Estoppel in Texas,* 41 BAYLOR LAW REV. 447, 448 (1989); *see also Long,* 291 S.W.2d at 295. The purpose of the doctrine is "to uphold the sanctity of the oath and to prevent abuse of the judicial process." Baron & Martin, supra, at 459.

■■■ The elements required to trigger judicial estoppel are: (1) the sworn, prior inconsistent statement was made in a judicial proceeding; (2) the party who made the statement successfully maintained the prior position; (3) the prior inconsistent statement was not made inadvertently or by mistake, fraud or duress; and (4) the statement must be deliberate, clear, and unequivocal. *See American Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 589 (Tex.1975) (citing *Griffin v. Superior Insurance Co.,* 161 Tex. 195, 338 S.W.2d 415 (1960)); *Moore v. Neff,* 629 S.W.2d 827, 829 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). As an affirmative defense, appellees had the burden to conclusively prove all the elements of judicial estoppel. *See Mitchell v. City of Dallas,* 855 S.W.2d 741, 748 (Tex.App.—Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex.1994).

■■■ The DeWoodys contend that the prior sworn statements relied on by appellees are not inconsistent with their present legal position. First, the DeWoodys argue that these statements, if anything, only demonstrate that they nonsuited appellees in the Leaver Suit because they believed that Masters, Rippley, and Fugate acted under economic duress. Second, the DeWoodys contend that, even if economic duress was a defense to the allegations pled against appellees in the instant case, their prior statements were the result of fraudulent misrepresentations made by appellees.

---

**7.** In their brief, appellees maintain that they were also entitled to judgment as a matter of law because the summary judgment evidence conclusively established quasi-estoppel. Appellees did not, however, present this theory to the trial court in their motion. Although presented to the trial court in appellees' brief in support of their

motion, a motion for summary judgment "must stand or fall on the grounds expressly presented in the motion." *McConnell,* 858 S.W.2d at 341. Accordingly, we will not address this contention. *See State Farm Fire & Casualty Co.,* 858 S.W.2d at 380.

Appellees summary judgment proof of judicial estoppel consists of statements made by the DeWoodys during the Leaver Suit in depositions, interrogatory responses, statements made in live pleadings, and statements made during trial. Appellees contend that this evidence conclusively proves that they are entitled to judgment as a matter of law because the DeWoodys are judicially estopped from asserting that appellees: (1) willfully facilitated Leaver's scheme because the DeWoodys maintained in the Leaver Suit that appellees acted under coercion and duress; (2) proximately caused the DeWoodys' damages for which they now seek relief because they maintained that the covert scheme of Leaver and Hopkins & Sutter were the proximate cause of these damages in the Leaver Suit; and (3) acted with knowledge of Leaver's scheme because the DeWoodys previously asserted that appellees unknowingly facilitated the take-over attempt because they did not have independent legal counsel.

We have reviewed excerpts of sworn statements referenced in appellees' motion for summary judgment and included in their brief to this court as an appendix. Additionally, we have reviewed the summary judgment proof submitted to the trial court as an appendix to appellees' motion and to this court as the first two of nine volumes of supplemental transcript. At most, appellees' summary judgment proof demonstrates that, *during the Leaver Suit*, the DeWoodys believed that appellees acted under economic duress when they facilitated Leaver's attempt to take over CAN by diluting the DeWoodys' stock and attempting to financially destroy them. Economic duress, however, is only a defense against whom it is claimed was responsible for the claimant's financial distress. *See Dimmitt v. Robbins*, 74 Tex. 441, 12 S.W. 94, 97 (1889); *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 109 (Tex.App.—Dallas 1987, writ ref'd n.r.e). Even assuming, without deciding, that appellees' summary judgment evidence conclusively proves that the DeWoodys are judicially estopped from asserting that appellees were

not under duress or coercion when they assisted Leaver in his take-over attempt, appellees are not entitled to judgment as a matter of law because economic duress is not a valid defense against the DeWoodys' allegations in the instant case.

To the extent that appellees assert that the DeWoodys are judicially estopped from asserting that appellees proximately caused the damages for which they now seek relief, the statements appellees rely on are not clear and unequivocal. All of the cited statements from the Leaver Suit evidencing the DeWoodys' belief that persons other than appellees were responsible for their damages were premised on the belief that Leaver coerced appellees to facilitate his scheme by placing them under economic duress. While these statements are demonstrative of the DeWoodys' prior position that appellees lacked the moral culpability of the other defendants in the Leaver Suit, they are not clear or unequivocal statements that appellees bore no legal responsibility or that the other defendants in the Leaver Suit were the sole proximate cause of the DeWoodys' damages.

Finally, the summary judgment record does not support a finding that the DeWoodys are judicially estopped from asserting that appellees had no knowledge of Leaver's scheme to take over CAN.[8] Although the record is replete with statements made in the course of the Leaver Suit establishing the DeWoodys' prior position that appellees did not know of Leaver's fraudulent scheme because they did not have independent legal counsel, and were in fact victims of Leaver themselves; the DeWoodys' summary judgment proof raises a fact issue as to whether the statements were a result of mistake or fraud.

 In their conditional cross-point, appellees contend that the trial court erred in overruling their objections to the DeWoodys' summary judgment proof. An affidavit from an interested witness is insufficient to establish a party's right to recovery *as a matter of law* unless it is "clear, positive and direct,

---

8. We note that whether appellees knew that Leaver was planning to defraud the DeWoodys does not touch the issue of negligence, breach of fiduciary duty, or constructive fraud as pled in the DeWoodys' original and amended petitions.

otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R. CIV. P. 166a(c). The DeWoodys did not, however, seek summary judgment as a matter of law. Even if insufficient under Rule 166a(c) standards to grant judgment as a matter of law, a controverting affidavit from an interested witness is sufficient to raise a fact issue. *See id; see also Estate of Morris,* 577 S.W.2d 748, 753 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). The portion of Michael DeWoody's affidavit relating Masters's comments is not a statement of opinion or belief, nor is it subject to exclusion on hearsay grounds because it constitutes an admission. Accordingly, the trial court did not err in overruling appellees' objection as to this part of the DeWoodys' summary judgment proof.

The affidavit of Michael DeWoody alleges that Masters told him in January 1995 that, despite prior assertions to the contrary, appellees knew what they were doing when they cooperated with Leaver and that they did so because they were angry. When viewed in the light most favorable to the DeWoodys, Masters's alleged statement raises a fact issue as to what appellees knew when they facilitated Leaver's attempt to fraudulently gain control of CAN.

Accordingly, the trial court erred to the extent that it granted summary judgment in favor of appellees on the claims asserted against Masters, Rippley, Fugate, and CAN on the grounds of judicial estoppel.

**(b) Judicial Admissions**

■■■ A party seeking summary judgment on the grounds of judicial admissions must conclusively prove: (1) that the declaration relied on was made during the course of a judicial proceeding; (2) that the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony; (3) that the statement was deliberate, clear, and unequivocal; (4) that giving conclusive effect to the declaration will be consistent with public policy; and (5) that the testimony relates to a fact on which a judgment for the opposing party may be based. *See Mendoza v. Fidelity & Guaranty Ins. Underwriters, Inc.,* 606

S.W.2d 692, 694 (Tex.1980); *Griffin,* 161 Tex. 195, 338 S.W.2d at 419. Like the doctrine of judicial estoppel, statements made by a party or his attorney in the course of judicial proceedings that are not based on personal knowledge or are made by mistake or based on a mistaken belief of the facts are not judicial admissions. *See Gevinson v. Manhattan Construction Co. of Oklahoma,* 449 S.W.2d 458, 466 (Tex.1969); *see also Thomas v. St. Joseph Hosp.,* 618 S.W.2d 791, 794 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Hedge v. Bryan,* 425 S.W.2d 866, 868 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.).

■■■ The DeWoodys contend that the trial court erred to the extent that it granted summary judgment on the theory of judicial admissions because the statements relied on by appellees were not based on personal knowledge and were based on a mistaken belief of fact. As with their argument against the application of judicial estoppel, the DeWoodys contend that they raised a fact issue with regard to whether or not they were mistaken when they made statements in the Leaver Suit contrary to their position in the instant case. Finally, the DeWoodys argue that it would be against public policy to allow appellees to escape liability based on fraudulently induced "judicial admissions."

Appellees contend that the trial court did not err in granting summary judgment based on the DeWoodys' judicial admissions in the Leaver Suit because the admissions conclusively negate the elements of causation, intent, malice, recklessness, and other wrongful purposes. Appellees also argue that it would be against public policy to allow the DeWoodys a chance to recover against appellees after they have deliberately and unequivocally assigned the responsibility and culpability for their damages to Leaver and Hopkins & Sutter in the Leaver Suit.

As with our determination on the issue of judicial estoppel, we find the statements relied on by appellees fail to meet the requirements of conclusive judicial admissions because: (1) economic duress and coercion based on Leaver's conduct is not a defense against the allegations asserted by the De-

Woodys; (2) the statements relied on by appellees to conclusively negate the element of causation are not clear and unequivocal; and (3) there is some evidence in the summary judgment record that the DeWoodys' statements of what appellees knew when they facilitated Leaver's take-over attempt were merely statements of opinion based on a mistaken belief of fact or fraud.

Therefore, the trial court erred to the extent that it granted summary judgment on the grounds of judicial admissions in favor of appellees on the claims asserted against Masters, Rippley, Fugate, and CAN.

### (c) Statute of Limitations

 A defendant seeking summary judgment on statute of limitations grounds must (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *See Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988).

The DeWoodys filed suit against appellees on April 7, 1995. The primary factual basis for this suit involves the DeWoodys' 1992 attempt to sell their stock in CAN to Leaver. The DeWoodys pled, however, that the discovery rule tolled all applicable statutes of limitations until January 1995.

The DeWoodys contend that the appellees' motion for summary judgment and summary judgment proof does not conclusively prove appellees' right to judgment as a matter of law on the grounds of statute of limitations because appellees failed to prove when each cause of action accrued and failed to negate the discovery rule.

Appellees moved for summary judgment on the DeWoodys' claims against Masters, Rippley, Fugate, and CAN for "tortious conduct, including but not limited to ... claims for negligence and gross negligence [on the grounds that they] are barred by the statute

of limitations." In their trial brief in support of their motion for summary judgment, appellees argued that the DeWoodys "failed to establish any legitimate basis for the tolling of such limitations period" and that the evidence before the trial court demonstrates that the DeWoodys had knowledge of, or could have discovered through the exercise of reasonable diligence, the conduct of which they now complain. Appellees now contend that the prior petitions in the Leaver Suit conclusively establish the accrual of each cause of action and when the DeWoodys discovered, or could have discovered through the exercise of reasonable diligence, the facts giving rise to the alleged injuries.

We need not address the merits of whether the DeWoodys' causes of action as pled in their original petition are time barred because appellees failed to meet their summary judgment burden as a matter of law. Appellees' global assertion, absent summary judgment evidence, that the DeWoodys' claims against Masters, Rippley, Fugate, and CAN for tortious conduct are time barred is insufficient to establish when each of the sixteen individual causes of action asserted against appellees accrued, nor does it conclusively negate the DeWoodys' invocation of the discovery rule. *See Burns,* 786 S.W.2d at 267; *see also Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988). Moreover, the only summary judgment evidence appellees cite to this court to defeat the DeWoodys' fraudulent concealment allegation is the DeWoodys' petitions filed in the Leaver Suit prior to an inapplicable date in 1993.[9] These petitions, however, are not part of appellees' summary judgment proof. We refuse to indulge the presumption that the trial judge had these superseded petitions from the Leaver Suit in front of him for consideration or that such proof would have conclusively established when the DeWoodys discovered, or could have discovered through the exercise of reasonable diligence, the facts giving rise to the alleged injuries.

Accordingly, the trial court erred to the extent that it granted summary judgment on

**9.** Appellees now contend that the DeWoodys nonsuited their individual claims in the instant case on September 20, 1995. This contention, however, was not presented to the court below and is not supported by the record.

the DeWoodys' claims against appellees for tortious conduct based on the statute of limitations because appellees failed to conclusively prove with competent summary judgment evidence that these claims are time barred as a matter of law.

### 3. Individual Claims against Dunlap

The individual causes of action asserted in the DeWoodys' amended petition addressed by appellees' motion for summary judgment also arise out of the DeWoodys' attempt to sell Leaver their interest in CAN. The DeWoodys alleged the following causes of action against Dunlap: (1) breach of contract arising out of Dunlap's assignment to the DeWoodys of 50% of the proceeds from his claims against Hopkins & Sutter; (2) conversion, theft of business secrets, and improper procurement of business information with malice for revealing confidential information to Leaver, Masters, Rippley, and Fugate about the DeWoodys' financial difficulties; (3) conspiracy to force the DeWoodys out of CAN; (4) tortious interference with the DeWoody–Leaver stock contract; (5) breach of fiduciary duty; (6) breach of duty of good faith and fair dealing; (7) fraud by attempting to force the DeWoodys out of CAN for little or no money; (8) fraud in a stock transaction; (9) constructive fraud; (10) malicious civil prosecution; (11) intentional infliction of emotional distress; (12) oppressive conduct; and (13) negligence.

As to the above causes of action only, Dunlap moved for summary judgment on the grounds of (1) statute of limitations, (2) res judicata, (3) collateral estoppel; (4) release of the agreed judgment, (5) indemnification, and (6) waiver and estoppel.

Dunlap moved for summary judgment on statute of limitations grounds together with Masters, Rippley, Fugate, and CAN. We have already held that appellees summary judgment proof fails to establish that the DeWoodys' claims against Masters, Rippley, Fugate, and CAN are time barred as a matter of law. We now hold that Dunlap also failed to satisfy his summary judgment burden on the affirmative defense of the statute of limitations for the same reasons.

■ Dunlap's affirmative defenses of res judicata, collateral estoppel, release, indemnification, waiver, and estoppel rest on a common assumption—that the settlement reached between Dunlap and the DeWoodys through the entry of a Covenant Not to Execute, Agreed Judgment, and eventual Release, is enforceable. Although unchallenged by the DeWoodys' original petition, their amended petition included an allegation of fraud with respect to the entry of the Agreed Judgment and Dunlap's subsequent alleged misrepresentations about his intent to give the DeWoodys 50% of the proceeds from any settlement of his claims against Hopkins & Sutter. This allegation alone is sufficient to defeat Dunlap's entitlement to summary judgment on the grounds of res judicata, collateral estoppel, release, indemnification, waiver, and estoppel. *See, e.g., Oryx Energy Co. v. Union Nat. Bank of Texas,* 895 S.W.2d 409, 416 (Tex.App.—San Antonio 1995, writ denied); *First American Title Ins. Co. v. Adams,* 829 S.W.2d 356, 364 (Tex. App.—Corpus Christi 1992, writ denied); *Bexar County Criminal Dist. Attorney's Office v. Mayo,* 773 S.W.2d 642, 644 (Tex. App.—San Antonio 1989, no writ); *Charalambous v. Jean Lafitte Corp.,* 652 S.W.2d 521, 525 (Tex.App.—El Paso 1983, writ ref'd n.r.e.).

As discussed above, Dunlap's motion for summary judgment failed to address the new causes of action asserted in the DeWoodys' amended petition. Because the DeWoodys' right to attack the agreed judgment with Dunlap is dependent on proof of fraud, collusion or misrepresentation, and Dunlap's motion for summary judgment failed to request relief on the DeWoodys' allegation of fraud and misrepresentation, the trial court erred to the extent that it granted summary judgment in favor of Dunlap on the affirmative defenses of res judicata, collateral estoppel, release, indemnification, waiver, and estoppel. Accordingly, without regard to the merits, we reverse and remand the summary judgment granted in favor of Dunlap on all causes of action asserted in the DeWoodys' original petition.

**4. Derivative Claims on Behalf of CAN against Masters, Rippley, Fugate, and Dunlap**

The derivative claims on behalf of CAN pled in the DeWoodys' original petition against appellees are identical to those pled in their amended petition. The DeWoodys as shareholders asserted claims on behalf of CAN including breach of fiduciary duty, usurpation of corporate opportunities, and negligence. These derivative claims are based primarily on an allegation that appellees settled their individual claims against Hopkins & Sutter while disregarding, releasing, and abandoning CAN's claims.

Appellees moved for summary judgment on the grounds that the DeWoodys lacked standing and have waived and are estopped from asserting any claims derivatively on behalf of CAN (1) by virtue of their assignment to Hopkins & Sutter of any proceeds they might receive as a result of any claims asserted by CAN against Hopkins & Sutter and (2) because of their failure to vote in favor of CAN suing Hopkins & Sutter.

**(a) Standing**

■ In order to maintain a suit, a plaintiff must have a justiciable interest in the subject matter of the litigation. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). An aspect of justiciability, standing is determined by whether a plaintiff has such a personal stake in the outcome of the controversy as to warrant his invocation of the court's jurisdiction and to justify the exercise of the court's remedial powers on his behalf. *See Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975); *see also Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543, 546 (Tex.App.—Dallas 1991, no writ). The Texas Business Corporations

Act provides that a derivative suit may be brought in Texas if:

(1) The plaintiff was a record or beneficial owner of shares ... at the time of the transaction of which he complains, or his shares or interest thereafter devolved upon him by operation of law from a person who was such an owner at that time, and

(2) The initial pleading in the suit states:

(a) The ownership required by Subsection (1), and

(b) With particularity, the efforts of the plaintiff to have suit brought for the corporation by the board of directors, or the reasons for not making any such efforts.

TEX. BUS. CORP. ACT ANN. art. 5.14(B) (Vernon 1980).

■ The DeWoodys contend that the assignment, even if enforceable,[10] does not assign all benefits they could receive as shareholders if CAN sued Hopkins & Sutter. Having otherwise complied with the statutory requirements, the DeWoodys argue that the trial court erred to the extent that it determined that they lacked standing due to the assignment.

In contrast, appellees argue that the DeWoodys lack standing because they "irrevocably assigned back to Hopkins & Sutter all of their interests as stockholders in any corporate recovery against Hopkins & Sutter." Appellees contend that because of this complete assignment, the DeWoodys have suffered no loss or damage and thus have no justiciable interest in the controversy.

In return for a release of their individual claims against Hopkins & Sutter, the DeWoodys assigned to Hopkins & Sutter any money or other property paid or payable to

---

10. The DeWoodys also argue that the assignment is unenforceable due to the occurrence of a "Release Event." Specifically, paragraph nine of the DeWoody–Hopkins & Sutter assignment provides that all obligations under the assignment shall terminate upon the "execution of a complete release by CAN to Assignees [Hopkins & Sutter] which does not involve the payment of money by Assignees to CAN." Appellees contend that the settlement agreement and unspecified evidence presented to the trial court demonstrates that CAN has received substantial sums for the re-

lease. We note, however, that appellee's settlement agreement does not specify what CAN received in return for a release of its direct claims, but merely states that appellees and CAN release any and all claims for the "sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged." Moreover, in pleadings filed September 14, 1995, Masters, Rippley, and Fugate represented to the trial court that they "have not yet determined how much, if any, of the settlement proceeds will be paid to CAN."

the DeWoodys as a result of CAN's claims against Hopkins & Sutter. The assignment did not, however, convey all the DeWoodys' interests as shareholders. In fact, the assignment explicitly recognizes the DeWoodys' continued ownership in CAN and their right to sell the same, subject only to any purchaser's acceptance of the terms of the assignment and notice to Hopkins & Sutter. We interpret this provision as an implicit recognition by the parties to the assignment that the DeWoodys, as stockholders in a closely held corporation, retain an equitable interest in at least the maintenance of CAN as an ongoing concern. There is no evidence that CAN would be required or able to pay its shareholders the proceeds from the settlement of its direct claims against Hopkins & Sutter over the claims of its legitimate creditors. As stockholders, the DeWoodys are equitable owners of these potential assets and have standing to bring a derivative suit. *See Roadside Stations, Inc. v. 7HBF, Ltd.,* 904 S.W.2d 927, 931 (Tex.App.—Fort Worth 1995, no writ); *Rapp v. Felsenthal,* 628 S.W.2d 258, 260 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *see also* Tex. Bus. Corp. Act Ann. art. 5.14(B) (Vernon 1980). We hold that the DeWoodys' assignment to Hopkins & Sutter, even if still enforceable, does not eliminate the DeWoodys' personal interest in ensuring that CAN is fairly compensated for any wrongs committed by Hopkins & Sutter.

■ The DeWoodys also complain that the trial court erred to the extent it determined that they lacked standing to assert claims in a derivative capacity on behalf of CAN due to Michael DeWoody's abstention on the vote for CAN to sue Hopkins & Sutter. In light of the DeWoodys' allegation that this abstention was gained by means of appellees' alleged misrepresentations concerning their intention to prosecute CAN's claims, we can find no justification for determining that the DeWoodys' are somehow deprived of any personal interest in CAN being fairly compensated for its claims.

**(b) Waiver and Estoppel**

■ Finally, appellees moved for summary judgment on the grounds that the De-

Woodys have waived and are estopped from asserting any claims in a derivative capacity on behalf of CAN by virtue of the Hopkins & Sutter assignment and Michael DeWoody's abstention on the vote for CAN to sue the law firm. We hold that the trial court erred to the extent that it granted summary judgment on the DeWoodys' derivative claims on behalf of CAN because (1) they could not have waived the right to sue appellees on behalf of CAN for alleged conduct occurring after the assignment and (2) appellees failed to present summary judgment evidence conclusively establishing that the DeWoodys made false representations or concealed material facts. *See Houston Fire & Cas. Ins. Co. v. Pritchard & Abbott,* 155 Tex. 120, 283 S.W.2d 728, 730 (Tex.1955) (waiver); *see also Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (Tex.1952) (estoppel); *El Paso National Bank v. Southwest Numismatic Invest. Group, Ltd.,* 548 S.W.2d 942, 947 (Tex.Civ.App.—El Paso 1977, no writ) (estoppel).

### IV. Conclusion

We reverse the trial court's grant of summary judgment on the causes of action as listed above not explicitly addressed in appellees' motion for summary judgment. Additionally, appellees failed to conclusively establish their right to judgment on the claims addressed in their motion for summary judgment. Therefore, we reverse the trial court's grant of summary judgment and remand for trial on the merits.