

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00320-CV

TERRY MCBRIDE                                          APPELLANT

V.

JOHN JAMES                                             APPELLEE

### NO. 02-09-00446-CV

TERRY MCBRIDE                                          APPELLANTS
AND RICHARD GUEST

V.

JOHN JAMES                                             APPELLEE

----------

## FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

---

[1]*See* Tex. R. App. P. 47.4.

In this consolidated appeal,[2] Appellants Terry McBride and Richard Guest independently appeal from the trial court's orders in this dispute over the proceeds from the sale of an oil rig and related equipment (the Rig).  We affirm.

## II.  Factual and Procedural History

In 2005, in a prior action in Parker County, McBride sued Lee C. "Skip" Potts, seeking payment on the promissory note Potts signed related to the purchase of the Rig (the Parker County Lawsuit).  Potts was Appellee John James's business partner and coshareholder in the closely held corporation Black Jack Exploration, Inc., an oil exploration and drilling services firm. McBride's petition in the Parker County Lawsuit stated that on June 14, 2005, Potts (borrower) signed a promissory note agreeing to pay McBride (lender) $215,000 plus interest.  McBride's petition alleged breach of contract and included a claim based on a sworn account.  McBride sought not only judgment on the debt Potts owed but also a "Judgment for Foreclosure of Plaintiff's security interest in the . . . [R]ig and its equipment . . . [and] issuance of an Order for Sale on the collateral as provided by law."  The McBride-Potts promissory note lists the Rig as security interest and McBride as the secured party.

---

[2]McBride appeals the trial court's grant of summary judgment, which was severed from trial court cause number 164,684-B into number 164,684-B-1. Guest and McBride appeal the trial court's grant of declaratory judgment (also severed into 164,684-B-1).  Guest also appeals the trial court's termination and failure to reinstate the parties' mediated settlement agreement, which was retained in cause number 164,684-B.  The parties' appeals were consolidated on review.

2

After Potts answered with a general denial, McBride invoked rule of civil procedure 185 and moved for a no-evidence summary judgment based solely on his sworn-account claim. In his petition, McBride stated that Potts had "signed and issued to [McBride] a Promissory Note dated July 14, 2005, whereby [Potts] promised to pay to the order of [McBride] the principle sum of $215,000, with interest . . . [] for *drilling rights and drilling equipment*." [Emphasis added.] McBride also stated that his "claim is based upon and pled as a sworn account." After a hearing, the Parker County trial court granted McBride summary judgment and awarded him $215,000 plus interest.

In July 2006, James, individually and derivatively as Black Jack's shareholder, brought suit against McBride, Guest, and others[3] for damages and injunctive relief claiming that because Black Jack and not Potts had purchased the Rig, Black Jack was entitled to the proceeds from the Rig's sale (the McBride-James Lawsuit).

## A. Mediated Settlement Agreement

In the McBride-James Lawsuit, in late November 2007, Guest filed a Motion to Put (the) Rig to Work. At the hearing on Guest's motion, a rule 11 agreement was read into the record wherein the parties granted Guest possession of the Rig to put it into operation or to lease it out with the proceeds remitted to a receiver pending the litigation's outcome. On November 30, 2007,

---

[3]The other parties were nonsuited at various times in the proceedings.

the trial court issued an order approving the parties' rule 11 agreement. On January 23, 2008, the parties reached a mediated settlement agreement wherein they agreed to sell the drilling equipment for $600,000 and "to cooperate in efforts to sell the [R]ig."

On March 4, 2008, Guest, relying on the parties' mediated settlement agreement, filed a motion to dismiss James's claims. A day later, James filed a motion seeking sanctions and asking the trial court to declare the settlement agreement "null and void," claiming that Guest's failure to provide the Rig's location and his evasiveness had caused the parties to lose a $600,000 sales opportunity. At the April 16, 2008 hearing on James's motion, after hearing testimony that Guest had not put the Rig into operation, had failed to disclose the Rig's location, and did not respond to telephone calls, and that James's independent efforts to locate the Rig had failed, the trial court terminated the settlement agreement. After terminating the parties' agreement, the trial court ordered the Rig sold and the proceeds deposited in the court registry. On May 13, 2008, Guest filed objections to the trial court's April 18, 2008 order. Guest filed a motion to reinstate the settlement agreement, and requested a jury trial to enforce the agreement. After a hearing, the trial court denied Guest's motion. Neither order contains provisions to sever the rulings from cause number 164,684-B.

4

**B. James's Partial Summary Judgment**

In May 2009, James, relying on the position McBride had taken in the Parker County Lawsuit relative to the Rig—that of secured creditor—successfully moved for partial summary judgment on the Rig's ownership. In his response to James's motion for partial summary judgment, McBride indicated that the "central issue . . . [] is the ownership of [the] . . . [R]ig Defendant McBride *sold* to Defendant Potts." [Emphasis added.] The response also indicated that at the time the trial court rendered its decision in the Parker County Lawsuit, "McBride had already peacefully repossessed the [R]ig." In closing his response McBride stated that he "claims he purchased the . . . [R]ig and allowed Defendant Potts to use said [R]ig and loaned him $215,000 to purchase drilling rights and maintain the [R]ig."

McBride's response includes excerpts from Potts's, McBrides's and James's depositions taken in the McBride-James Lawsuit. Both James and Potts stated that they purchased the Rig from a third-party, Ronnie Cubine, and that they paid Cubine with cash and a cashier's check. James averred that McBride provided the funds Black Jack used to purchase the Rig (a check made out to Black Jack), that the check was advance payment for wells Black Jack contracted to drill for McBride, and that Black Jack did drill two wells for McBride. Potts indicated that McBride furnished the money for the Rig with the "full intention that [it] was [McBride's] equipment," but also noted that when he picked up the check, McBride requested that Potts sign a promissory note.

McBride averred that he was not aware of Black Jack until after the company began drilling, that he bought a Rig that Potts took to drill wells with, that Potts was supposed to pay him back, that he personally did not pay Cubine, that he financed the purchase of the Rig for Potts, that he (McBride) owned the Rig, and that once Potts paid McBride for the Rig, Potts would obtain title to it. McBride agreed that the promissory note is the transaction's only documentation. McBride also admitted that after he peaceably foreclosed and took possession of the Rig, he still pursued the Parker County Lawsuit against Potts—ultimately ending up with both possession of the Rig and judgment against Potts for $215,000. McBride indicated that he sold the Rig to Guest but that Guest had not yet paid him anything for the Rig.

On July 2, 2009, without conducting a hearing, the trial court granted James's motion for partial summary judgment in the McBride-James Lawsuit. In its order, the trial court concluded that:

1. Defendant Terry McBride's prior judicial admissions bar Defendant McBride from claiming he purchased the . . . [R]ig;

2. A judgment entered in Cause No. CV06-1218, styled *Terry McBride v. Skip Potts*, pending in the 415th District Court of Parker County, Texas bars Defendant Terry McBride from claiming through any security interest in the . . . [R]ig; [and]

3. Defendant Guest has no right to recover funds deposited in the registry of the Court.

The trial court then severed this ruling from James's remaining causes of action into cause number 164,684-B-1. On September 17, 2009, McBride filed

6

notice of his intent to appeal the severed summary judgment. On November 12, 2009, the trial court granted a declaratory judgment, awarded Black Jack the proceeds of the sale in the court registry, and severed the declaratory judgment into cause number 164,684-B-1, the same cause number as its ruling on the partial summary judgment. McBride's and Guest's appeals followed.

### III. Mediated Settlement Agreement

Guest asserts two independent issues, alleging that the trial court erred by terminating, and then failing to reinstate, the mediated settlement agreement, actions the trial court took prior to granting the summary judgment. However, there does not appear to be a final, appealable judgment or order as to these issues, as the trial court did not sever these rulings out, and they remain in the parent cause of action, cause number 164,684-B. Therefore, we dismiss these issues for want of jurisdiction. *See* Tex. R. App. P. 43.2(f).

### IV. Summary Judgment

In two issues, McBride argues that the trial court erred by granting James's motion for summary judgment and by issuing a declaratory judgment awarding the proceeds from the sale of the Rig to Black Jack based on the summary judgment. Guest adopts McBride's issues.

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.

7

Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Mann Frankfort*, 289 S.W.3d at 848; *Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 143–44 (Tex. App.—Fort Worth 2009, pet. denied).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

## B. Applicable Law

Judicial estoppel precludes a party who successfully maintains a position in one proceeding from later adopting a clearly inconsistent position in another

8

proceeding to obtain an unfair advantage. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (citing *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008)). The doctrine is not intended to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own benefit. *Id*. (citing *Schubert*, 264 S.W.3d at 7). The elements of judicial estoppel are (1) a sworn, prior inconsistent statement made in a prior judicial proceeding; (2) the successful maintenance of the contrary position in the prior action; (3) the absence of inadvertence, mistake, fraud, or duress in the making of the prior statement; and (4) the statement was deliberate, clear, and unequivocal. *DeWoody v. Rippley*, 951 S.W.2d 935, 944 (Tex. App.—Fort Worth 1997, writ dism'd by agr.).

A claim based on a sworn account is brought pursuant to Texas Rule of Civil Procedure 185. Tex. R. Civ. P. 185. Rule 185 is a procedural tool that limits the evidence necessary to establish a prima facie right to recovery on certain types of accounts. *Id*. Rule 185 applies only "to transactions between persons, *in which there is a sale upon one side and a purchase upon the other, whereby title to personal property passes from one to the other*, and the relation of debtor and creditor is thereby created by general course of dealing . . . ." *Bird v. First Deposit Nat'l Bank*, 994 S.W.2d 280, 282 (Tex. App.—El Paso 1999, pet. denied); *see also Hou-Tex Printers, Inc. v. Marbach*, 862 S.W.2d 188, 190 (Tex. App.—Houston [14th Dist.] 1993, no writ).

9

## C. Analysis

The record shows that in his 2005 Parker County Lawsuit against Potts, McBride filed a petition claiming breach of contract and invoking rule 185 on a sworn account claiming a *security* interest in the drilling equipment; that after Potts answered with a general denial, McBride invoked rule 185 in his motion for no-evidence summary judgment based solely on his sworn account claim; that the trial court granted McBride summary judgment and awarded him $215,000 plus interest; that there is no evidence that McBride's pleading resulted from inadvertence, mistake, fraud, or duress; and that McBride made deliberate, clear, and unequivocal statements in his summary judgment pleading. McBride's motion for summary judgment was his final pleading, and the trial court settled the case on the basis of that pleading; therefore, even viewing the evidence favorably to McBride, he is estopped from now claiming that he holds an ownership interest, a position adverse to the security-interest-holder position he successfully took in his motion for summary judgment in the Parker County Lawsuit based on the same facts and concerning the same piece of property— the Rig. *See Dickson v. Stockman*, 411 S.W.2d 610, 614 (Tex. App.—Fort Worth 1966, writ ref'd n.r.e.) (affirming judicial estoppel against appellant pleading claims contradicting those made in prior successful summary judgment action); *Wall v. Young Cnty. Lumber Co.*, 368 S.W.2d 789, 792 (Tex. App.—Fort Worth 1963, no writ.) (concluding that appellant "necessarily" taking a positive position of creditor in prior sworn account action seeking repayment of advanced funds

was "judicially estopped" in later action from asserting title to the advanced funds or title to the land purchased with the funds); *see also Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet. denied) (indicating that common definition of term "owner" does not include person in possession of personal property collateral for purpose of selling it pursuant to a security agreement); *Borg-Warner Acceptance Corp. v. Massey-Ferguson, Inc.*, 713 S.W.2d 351, 354 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (op. on reh'g) (noting that it is well settled in Texas law that an owner cannot have a lien on his own property because they are inconsistent interests); *cf. Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 234 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that passage of title is required to invoke procedural rule on sworn account).

Therefore, we conclude that the trial court did not err by granting James partial summary judgment, and we overrule McBride's first issue.

In his second issue, McBride challenges the trial court's declaratory judgment awarding the proceeds of the sale to Black Jack.

We review declaratory judgments under the same standards as other judgments and decrees. *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Id.* Generally, declaratory judgments decided by summary judgment are reviewed under the same standards of review that govern summary

11

judgments. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2009); *Lidwai*, 112 S.W.3d at 730.

McBride and Guest's only argument on appeal is that because "the summary judgment is in error . . . the declaratory judgment is also in error." The trial court granted the declaratory judgment as a matter of law based on the summary judgment, which we have already upheld. Therefore, based on our resolution of his first issue, we overrule McBride's second issue as well. *See* Tex. R. App. P. 47.1.

## V. Conclusion

Having overruled all of McBride's issues, we affirm the trial court's judgment as to McBride. We dismiss for want of jurisdiction Guest's two mediated settlement agreement issues and affirm the trial court's judgment as to Guest on the two issues he adopted from McBride.

BOB MCCOY
JUSTICE

PANEL: WALKER, MCCOY, and GABRIEL, JJ.

WALKER and GABRIEL, JJ. concur without opinion.

DELIVERED: March 24, 2011