Affirmed and Opinion filed January 6, 2004
















Affirmed and
Opinion filed January 6, 2004.

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NO. 14-02-00851-CV

____________

 

CHARLES BROWN, L.L.P. D/B/A THE CHARLES BROWN LAW
FIRM, Appellant

 

V.

 

LANIER WORLDWIDE, INC. AND CAM EDWARDS, Appellees

 

______________________________________________________________

 

On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 99-64064

 

______________________________________________________________

 

O P I N I O N

            In
this suit to enforce a foreign judgment, Charles Brown, L.L.P. d/b/a The
Charles Brown Law Firm (“Brown L.L.P.”), appeals the trial court’s denial of
its motion for summary judgment and the trial court’s order granting summary
judgment in favor of appellees, Lanier Worldwide,
Inc. (“Lanier”) and Cam Edwards. We affirm.









I.  Factual And Procedural Background

            The
dispute between the parties centers around an
arbitration award rendered in October 1999 in favor of Lanier.  The award was confirmed in a Georgia court,
against Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm (“Brown
P.L.L.P.”).[1]  Lanier sought to enforce the Georgia judgment
in a Texas district
court where Brown L.L.P. had previously filed suit against Lanier.  The district court entered summary judgment
in favor of Lanier against Brown L.L.P and denied Brown L.L.P.’s
summary judgment motion.     The parties’
long and protracted legal dispute relates to an Order Agreement (the
“Agreement”) between the Charles Brown Law Firm and Lanier to place a copy
machine in the offices of The Charles Brown Law Firm.[2]  On December 12, 1995, Jerry Dodson, an employee of the
Charles Brown Law Firm, and Cam Edwards, a Lanier representative, negotiated
the Agreement.  Under the terms of  the Agreement, the
parties were required to resolve any disputes through arbitration in Atlanta, Georgia. 

            The
Charles Brown Law Firm used the copy machine for approximately three years,
before Lanier removed it in early 1999.[3]  In June of that year, Lanier filed a written
demand for arbitration in Georgia claiming
the respondents, listed in Lanier’s Statement of Claims as “The Charles Brown Law
Firm,” “Charles W. R. Brown,” and Dodson, failed to make required payments
under the Agreement.  In response, on June 29, 1999, Brown
L.L.P. filed suit against Lanier in a Texas county
court (hereinafter “county court action”), asserting claims for fraud and
violations of the Texas Deceptive Trade Practices Act (“DTPA”).  Relative to the arbitration, Brown L.L.P.’s petition stated:

Defendant has threaten (sic) and has taken steps to have this matter
submitted to arbitration in Georgia, which has forced Plaintiff
to file this suit. . . . Plaintiff requests that the Court declare that the
arbitration clause be declared void and unenforceable.   

 

Brown L.L.P. also requested a temporary restraining
order and temporary injunction.[4]  Attached to the application was an affidavit
executed by Charles Brown, averring (1) he had not signed the agreement
consenting to arbitration; (2) he was the only person authorized to sign on
behalf of Brown L.L.P.; and (3) if the injunction did not issue, “Charles Brown
Law Firm, L.L.P. will be required to go to great expense to appear in
Georgia.”  The temporary restraining
order was granted ex parte. 

            On July 13, 1999, a
temporary injunction hearing was conducted in the county court action on Brown L.L.P.’s application. 
The court held a full evidentiary hearing on the issues raised in the
application, including Brown’s argument that, because he had not signed the
Agreement, he had not agreed to arbitration.[5]  Following the hearing, the injunction was
denied and Lanier’s motion to stay the proceedings and compel arbitration was
granted. 

            In an
attempt to once again halt the arbitration, on August 4, 1999, Charles Brown (“Brown”),
appearing pro se, filed a lawsuit virtually identical to the county court suit
in the 281st District Court of Harris County (the “district court action”)
against Lanier.  Brown alleged fraud,
fraudulent inducement, and violations of the DTPA.  The petition contained, in part, the
following:   




                        The Defendant is in the business of selling
and leasing copy equipment and contacted an employee of Charles Brown,
P.L.L.P.,[6]
d/b/a The Charles Brown Law Firm, Plaintiff, for the purpose of placing a
machine in Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm office. . .
. 

                        * * * 

Defendant never attempted to
obtain the signature of Plaintiff either in his individual capacity or as an
authorized representative of Charles Brown, P.L.L.C., the managing partner of
Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm. . . . 

                        * * * 

            The Defendant secured the signature of an employee of
Charles Brown, P.L.L.P. on an agreement the lease or rental of a Copier, at
copy of which is attached hereto (sic). 
The employee, Jerry Dodson, is not an employee of the Plaintiff and is
not authorized to sign any agreements on behalf of the Plaintiff. 

                        * * * 

Defendant has taken steps to
have this matter submitted to
arbitration in Georgia, which
has forced Plaintiff to file this suit. . . . Plaintiff requests that the Court
declare that the arbitration clause be declared void and unenforceable.  

(emphasis in original).  Brown also requested a temporary restraining
order and temporary injunction in the district court.  Attached to these documents was an affidavit
signed by Jerry Dodson, stating he did not have the authority to bind “Charles
Brown, P.L.L.P., d/b/a The Charles Brown Law Firm or Charles Brown,
Individually to a contract.”  Charles
Brown also furnished an affidavit, stating in part: “Charles Brown, P.L.L.P.,
The Charles Brown Law Firm, d/b/a Charles Brown P.L.L.P. is a limited liability
partnership, and I am the President of the managing partner Charles Brown
P.L.L.C.”  Brown’s request for a
temporary restraining order and injunction was denied.[7] 

 class=Section3>

            On August 6, 1999, Charles
W. R. Brown[8]
signed and sent to the American Arbitration Association a response to Lanier’s
Statement of Claims (“Response”).  The
initial paragraph of the Response states: “There is no legal entity ‘The
Charles Brown Law Firm.’  Charles Brown, P.L.L.P., files this response under protest to
Claimant, Lanier Worldwide, Inc. Statement of Claims” (sic).  Throughout the document, “Charles Brown,
P.L.L.P.” is identified as the business entity responding to Lanier’s
arbitration demand and is referenced as the correct legal entity to be named in
the matter.[9] 

            The
arbitration took place on October 4,
 1999.  In addition to
Lanier, the Charles Brown Law Firm, Charles W. R. Brown, P.L.L.P., Brown
L.L.P., and Charles Brown himself attended the arbitration,[10] all
appearing under protest.  The resulting arbitration
award, dated October
 13, 1999, awarded $29,639.18 to Lanier for accelerated
payments and attorney’s fees, as well as prejudgment and postjudgment
interest.  The award contained the
following finding: “LANIER WORLDWIDE, INC. and CHARLES BROWN, P.L.L.P. d/b/a
CHARLES BROWN LAW FIRM did enter into and execute the Order Agreement and are
therefore bound by that agreement to arbitrate all disputes arising therefrom.”[11]  

            In
early 2000, Brown L.L.P. sought relief from the arbitration award in the district
court action and filed a petition and motion to vacate the award.  Also, at that time, Lanier filed a motion to confirm
the arbitration award in a Georgia
court.  In response, The Charles Brown
Law Firm, Charles W. R. Brown, P.L.L.P., Charles Brown, L.L.P. d/b/a The
Charles Brown Law Firm, Charles Brown, P.C., Charles W. Brown, P.L.L.C., and
Dodson filed a Special Appearance, stating in part:   

The Brown Law Firm and
Brown, PLLP are not legal entities and therefore are not subject to 9 U.S.C. §§
1 et. seq.  In addition, Brown PLLP was not named in the
“Statement of Claims” as a party in the underlying arbitration upon which
Plaintiff relies for this Petition, nor was it named in the Award of the
Arbitrator.

Brown, LLP denies that 9
U.S.C. § 1 et. seq.
is applicable to it.  In addition, Brown,
LLP was not named in the “Statement of Claims” as a party in the underlying
arbitration, upon which the Plaintiff relies for this Petition, nor was it
named in the Award of the Arbitrator.[12]

 

            On September 5, 2000, a hearing
to confirm the arbitration award was held in the Georgia court.[13]  At the hearing, Lanier presented its
arguments for confirmation, while the Brown entities raised those issues argued
in prior proceedings.  Important to this
appeal, the following discourse occurred between Brown’s counsel, David
Davenport, and the court concerning the various names of the law firm:

THE COURT: What was the
correct legal entity at the time the petition was filed?

MR. DAVENPORT: L.L.P. or P.L.L.P., it could have been either
one. There’s no entity such as The Charles Brown Law Firm, that’s just a
d/b/a. He’s consistently stated that. 

THE COURT: D/b/a of what,
Charles Brown or Charles Brown P.L.L.P. or –

                        MR. DAVENPORT: D/b/a The Charles Brown Law Firm or –

THE COURT: How do I know
it’s not Charles Brown d/b/a Charles Brown Law Firm?

            MR. DAVENPORT: Your question was, Your Honor?

THE COURT: Is it Charles
Brown d/b/a The Charles Brown Law Firm?

MR. DAVENPORT: No. It’s Charles Brown P.L.L.P. d/b/a The
Charles Brown Law Firm or Charles Brown L.L.P. d/b/a The Charles Brown Law
Firm.

            THE COURT: How can it be P.L.L.P. or L.L.P.?

MR. DAVENPORT: Because it
was during part of the time of this agreement – 


            THE COURT: A P.L.L.P.?

MR. DAVENPORT:
P.L.L.P. and then the rules of Texas changed.

            THE COURT: And then it became an L.L.P.?

            MR. DAVENPORT: Then it became an L.L.P.

            THE COURT: D/b/a The Charles
Brown Law Firm?

            MR. DAVENPORT: Yes. It’s just a d/b/a . . . 

            * * * 

THE COURT: So you’re not
taking issue with that, you think that’s in correct form, Charles Brown,
P.L.L.P. d/b/a The Charles Brown –

MR. DAVENPORT: That is a
correct entity, but that is not the name in this lawsuit. . . .

 

(emphasis added).  Lanier’s counsel noted that all of the Brown
entities had been served and requested judgment be rendered.  The court confirmed the arbitration award
against Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm.  Final judgment was entered accordingly on September 25, 2000.[14]

            Subsequently,
Lanier filed a motion to domesticate its judgment in the Texas district
court action where Brown L.L.P.’s suit was pending.[15]  In response, Brown L.L.P. moved for summary
judgment, challenging the Georgia judgment on the following grounds: (1)
Charles Brown P.L.L.P. did not exist, was not a party to the lawsuit, and the
Texas court lacked jurisdiction over Charles Brown P.L.L.P.; (2) any misnomer
argument was precluded by the denial of Lanier’s motion to amend the judgment
in the Georgia court;[16] and
alternatively, (3) the “Texas Court that referred the case to arbitration had
no jurisdiction to refer the case to arbitration in Georgia, thereby rendering
the judgment void.”[17] 

            Lanier
filed a cross-motion for summary judgment, arguing (1) the variance between
Brown L.L.P. and Brown P.L.L.P. was merely a misnomer and because Brown had
failed to plead misnomer, Brown L.L.P. was liable on the judgment; (2) the
Brown entities actively promoted the misnomer and made judicial admissions in
support of the judgment as rendered, therefore, the entities were estopped from asserting they had no liability for the
judgment; and (3) Brown L.L.P.’s claims and causes of
action were barred by the doctrine of res judicata.  

            In
its response to Lanier’s cross-motion for summary judgment, Brown L.L.P. argued
it had in fact pleaded misnomer “in abatement” by filing a special appearance
in the Georgia court and that Lanier had effectively dismissed Brown L.L.P.
from the Georgia proceedings.  The trial
court denied Brown L.L.P’s motion, granted Lanier’s
cross-motion and entered final judgment domesticating the Georgia judgment,
but rendering it enforceable against Charles Brown L.L.P. 

II. 
Analysis

            In
its first issue on appeal, Brown L.L.P. argues the trial court erred in
granting Lanier’s summary judgment motion because a fact issue exists as to:
(1) whether Brown L.L.P. was the party named in the Georgia judgment; (2)
whether the Georgia court’s denial of Lanier’s request to “correct misnomer”
bars Lanier’s claims against Brown L.L.P.; (3) whether Lanier’s failure to timely
seek modification of the arbitration award under federal law bars relief;[18] and
(4) whether the Georgia court and the arbitration panel had personal
jurisdiction over Brown L.L.P.  

            Brown
L.L.P. argues in its second issue that the trial court erred in denying its
motion for summary judgment because (1) the Georgia judgment did not name Brown
L.L.P. as a judgment debtor; (2) Brown L.L.P. was dismissed from the Georgia
lawsuit; (3) the Georgia court expressly denied Lanier’s misnomer argument; and
(4) Lanier had engaged in an unwarranted collateral attack of a prior
adjudication of the same issue.  We begin
our analysis by examining Lanier’s cross-motion for summary judgment because it
is dispositive. We next review Brown L.L.P.’s collateral attack on the Georgia judgment,
and conclude with a discussion of Brown L.L.P.’s
motion for summary judgment. 

A.  Standard of Review

            The
propriety of a summary judgment is a question of law and thus, we review the
trial court’s decision de novo.  Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994); Taub v. Aquila
Southwest Pipeline Corp., 93 S.W.3d 451, 462 (Tex. App.—Houston [14th Dist.] 2002, no pet.). 
The question on appeal is whether the movant
met his burden by establishing that no genuine issue of material fact exists
and he is entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985); Corporate Leasing Int’l,
Inc. v. Groves, 925 S.W.2d 734, 736 (Tex. App.—Fort Worth 1996, writ
denied).  

            When
cross-motions for summary judgment are filed, a reviewing court examines all of
the summary judgment evidence presented by both sides, determines all questions
presented, and if reversing, renders such judgment as the trial court should
have rendered.  Bradley v. State ex rel.
White, 990 S.W.2d 245, 247 (Tex. 1999); Comm’rs Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Vill. of Pheasant Run Homeowners Ass’n
v. Kastor, 47 S.W.3d 747, 749–50 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).[19]  When both parties move for summary judgment,
each party must carry its own burden and neither can prevail due to the other’s
failure to meet its burden.  W.H.V., Inc. v. Assocs. Hous.
Fin., LLC, 43 S.W.3d 83, 87–88 (Tex. App.—Dallas 2001, pet. denied). 

            When
the trial court’s order granting summary judgment for one movant
and denying summary judgment for the other does not specify the grounds on
which it rests, we will affirm the trial court’s judgment if any of the grounds
raised in the prevailing movant’s motion are
meritorious.  Hanson v. Republic Ins. Co., 5 S.W.3d 324, 327 (Tex. App.—Houston
[1st Dist.] 1999, pet. denied) (citing Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996)); Groves, 925
S.W.2d at 736; see also Bradley, 990
S.W.2d at 247.

            During
our review of the trial court’s decision to enforce Lanier’s foreign judgment,
we are mindful that “public policy favors the validity of judgments.”  Garza
v. Tex. Alcoholic Beverage Comm’n, 83 S.W.3d 161,
166 (Tex. App.—El Paso 2000), aff’d, 89 S.W.3d 1 (Tex.
2002).  When an attack
is made upon a judgment, whether directly or collaterally, all presumptions
“consonant with reason are indulged in order to uphold the binding effect of 

 class=Section4>

such judgment.”  Garza,
83 S.W.3d at 166; see also Roberts v.
Hodges, 401 S.W.2d 332, 334 (Tex. App.—Amarillo 1966, writ ref’d n.r.e.) (noting
every reasonable presumption is indulged to sustain a foreign judgment).

B.  Lanier’s Cross-motion for
Summary Judgment 

            In
its summary judgment motion, Lanier argued that Brown P.L.L.P. was named as
judgment debtor in the Georgia judgment
because a misnomer had occurred.  Lanier
also argued that estoppel principles should apply
because Brown L.L.P. had “actively promoted” judgment in the name of Brown
P.L.L.P.  In response, Brown L.L.P.
argued that the misnomer doctrine did not apply because a misidentification had
occurred and, if the doctrine were to apply, it had pled misnomer in abatement.


1.  Misnomer

            Under
Texas law,[20] a
misnomer occurs when a plaintiff sues the correct entity but misnames it.  Chilkewitz v. Hyson, 22 S.W.3d 825,
828 (Tex. 1999).  Contrarily, a
misidentification arises when two separate legal entities actually exist and a
plaintiff mistakenly sues the entity with a name similar to that of the correct
entity.  Id.  When a misnomer occurs, service upon the
correct party is proper and the defendant is then under a duty to plead the
misnomer and seek abatement.  Rios v. Northwestern Steel
& Wire Co., 974 S.W.2d 932, 934 (Tex. App.—Houston [14th Dist.] 1998,
no pet.).  

            Texas law
recognizes that a misnomer of a defendant does not render a judgment void,
provided the intention to sue the correct defendant is evident from the
pleadings and process, such that the defendant could not have been misled.  See,
e.g., Adams v. Consol. 

 class=Section5>

Underwriters, 124
S.W.2d 840, 841 (Tex. 1939) (“When a corporation intended to be sued is sued
and served by a wrong corporate name . . . and suffers judgment to be obtained,
it is bound by such judgment.”); Dezso v. Harwood,
926 S.W.2d 371, 374 (Tex. App.—Austin 1996, writ denied) (finding the correct
defendant had sufficient notice she was being sued though her correct name was
not on the citation, rejecting the argument she was not a party to the suit); Hill Country Spring Water of Tex., Inc. v.
Krug, 773 S.W.2d 637, 640–41 (Tex. App.—San Antonio 1989, writ denied)
(discussing enforcement of a foreign judgment, noting “[a] misnomer of a
defendant does not render a judgment based on personal service . . . void,
provided the intention to sue the defendant actually served with citation is so
evident from the pleadings and process that the defendant could not have been
misled” (quoting Cockrell v. Estavez, 737 S.W.2d 138, 140 (Tex. App.—San Antonio
1987, no writ)); see also Holberg & Co. v. Citizens Nat’l Assurance Co., 856
S.W.2d 515, 516 (Tex. App.—Houston [1st Dist.] 1993, no writ) (finding judgment
modified to include an individual not previously named was not error, as
individual had opportunity to defend himself when his sole proprietorship was
sued).  “The test seems to be whether or
not the right person was sued, and whether or not he was put on notice that he,
and not some other person, had been sued.” 
West v. Johnson,
129 S.W.2d 811, 815 (Tex. Civ. App.—Fort Worth 1939,
writ ref’d).  The misnomer doctrine is
applicable when dealing with enforcement of a foreign judgment.  See, e.g., Hill Country,
773 S.W.2d at 640–41 (applying misnomer doctrine, under different factual
circumstances, and upholding foreign judgment).  

            In
fact, upholding the validity of a judgment in which a misnomer has occurred has
a long history in our jurisprudence.  In McGhee v. Romatka,
92 Tex. 38, 45 S.W. 552 (1898), the court examined whether a judgment was
binding on an individual named Jinks McGhee, although rendered against Alpheus McGhee, on a petition against Alpheus
McGhee, and on citation to Alpheus McGhee, but served
on Jinks McGhee.  Jinks McGhee was the
only child of Alpheus McGhee, but had never been
known by the name Alpheus McGhee.  Id. at 552.  The court
concluded the judgment was not void and was binding on Jinks McGhee.  Id. at 554.  In its
opinion, the court cited to a Supreme Court case which stated: 

The only question open here
is, whether, if a mistake be made in the name of a defendant, and he fails to
plead it in abatement, the judgment binds him, though called by a wrong
name.  Of this we have no doubt.  Evidence that it was an erroneous name of the
same person must, therefore, be admissible; otherwise, a mistake in the
defendant’s name . . . would render a judgment wholly inoperative.

Lafayette
Ins. Co. v. French, 59 U.S. 404, 409
(1855); see McGhee, 45 S.W. at
554.  

            In
addition, in Abilene Independent
Telephone & Telegraph Co. v. Williams, 11 Tex. 102, 229
S.W. 847 (1921), the Texas Supreme
Court noted:  

“The weight of authority is,
that if the writ is served on the party, by a wrong name, intended to be sued,
and he fails to appear and plead the misnomer in abatement, and suffers
judgment to be obtained, he is concluded, and . . . is affected as though he
were properly named therein.” 

Id. at 848 (quoting 1 Freeman on Judgments § 154 at 279 (4th
ed. 1898)).  The Abilene court further stated, “[n]umberless
errors entitle a party to a reversal of a judgment on appeal or writ of error,
which are of no avail when relied on to support a
collateral attack on the judgment or to furnish a basis for equitable relief
against the enforcement of the judgment.” 
Id.  The Abilene court upheld the judgment against the misnamed
defendant, noting he had “deliberately chose[n] to take the risk of being able
to successfully assail the validity of the judgment, after its entry.”  Id. at 849.

            The
principles enunciated in these cases are particularly applicable given the
facts of this case.  Here, after judgment
was rendered in the name of Brown P.L.L.P., Brown L.L.P. asserted (1) the
P.L.L.P. entity was non-existent; (2) the P.L.L.P. entity had never existed;
and (3) the Texas court
lacked jurisdiction over the P.L.L.P entity. 
Rather than asserting misnomer, Brown L.L.P. allowed judgment to be
rendered in the name of Brown P.L.L.P.—indeed, actively represented Brown
P.L.L.P. as the judgment debtor—and thus 

 class=Section6>

assumed the risk of being unable to assail the
judgment after its entry.[21]  

            Lanier
provided ample summary judgment evidence demonstrating a misnomer
occurred.  For example, in response to
Lanier’s demand for arbitration with The Charles Brown Law Firm, Charles W. R.
Brown, and Dodson, it was Brown L.L.P. which filed suit in the Texas county
court action seeking relief from the arbitration clause contained in the
Agreement.  In that suit, Brown L.L.P.
alleged: “[Lanier] . . . contacted an employee of [Brown L.L.P.] for the
purpose of placing a machine in [Brown L.L.P.’s]
office” and delivered possession of the copier to Brown L.L.P.   Furthermore, Brown L.L.P. admitted to using
the copier, making payments to Lanier for the copier, and indeed, sought
affirmative relief against Lanier regarding the copier.[22]   In addition to the lawsuit
filed by Brown L.L.P., Charles Brown, then filed suit against Lanier, stating
in his sworn petition that Lanier “contacted an employee of Charles Brown,
P.L.L.P., d/b/a The Charles Brown Law Firm, Plaintiff, for the purpose of
placing a machine in the Charles Brown, P.L.L.P. d/b/a The Charles Brown Law
Firm office.”  In his petition,
Brown also acknowledged that Brown P.L.L.P. had used the machine and made
payments on it.  In the accompanying
affidavits, both Dodson and Brown referred to Brown P.L.L.P. as the entity
involved in the matter.  Indeed, Brown’s
pleadings continually referred to “Charles Brown, P.L.L.P., d/b/a The Charles
Brown Law Firm” as the entity involved.[23]  In addition—although now alleged to be a
non-existent entity[24]—Brown
P.L.L.P filed a Response to Lanier’s Statement of Claims.  As in Brown’s pleadings, the Response
consistently referred to Brown P.L.L.P. as the correct business entity involved
in the matter.    

            Most
significantly, during the confirmation hearing, when specifically questioned by
the Georgia court as
to the correct legal entity involved, counsel for the Brown entities clearly
stated: “It’s Charles Brown P.L.L.P. d/b/a The Charles
Brown Law Firm or Charles Brown L.L.P. d/b/a The Charles Brown Law Firm.”[25] 

            Importantly,
Brown L.L.P. does not argue on appeal that two separate and distinct entities
are involved nor are there any documents in the record indicating that the
entities are in fact two separate, legal entities––there are no partnership
agreements, no tax identification numbers, no certificates of limited
partnership or assumed name which could support the conclusion that two
separate legal entities are involved in this case.[26]  Indeed, Brown L.L.P. merely asserts the
P.L.L.P. entity does not exist and has never existed.    

            In
addition, the evidence established the only contract at issue in this dispute
was the contract between Lanier and “The Charles Brown Law Firm.”  It is undisputed that Dodson—representing to
be an employee of Brown L.L.P. on one occasion and of Brown P.L.L.P. on another
occasion—signed the Agreement.  It is
also clear that Lanier’s intent was to pursue its remedies on the Agreement.
Although the Georgia judgment
named Brown P.L.L.P. as the judgment debtor, there is no question the judgment
was rendered on the basis of the Agreement and the summary judgment evidence
establishes that Brown L.L.P. was a party to that Agreement.     

            Also
significant, Brown L.L.P. does not raise any issues regarding lack of service,
or notice of any proceedings in this case, nor does it argue it was misled in
any way by the misnomer.[27]  Indeed, inasmuch as Brown L.L.P. originally
responded to Lanier’s request for arbitration by filing suit, it would be
disingenuous to now argue it lacked adequate notice of the Georgia
proceedings or the underlying claims. 
Moreover, there is record evidence indicating all Brown entities were
properly served in the Georgia
proceedings and no evidence was submitted by Brown L.L.P. to refute that claim.[28]  Further, the Brown entities attended the
arbitration, even if under protest, and were represented at the Georgia
confirmation hearing.  Thus, there is no
evidence that Brown L.L.P. was misled or prejudiced by any misnomer.  The evidence establishes that Brown L.L.P.
had an opportunity to litigate any claims it had against Lanier and that those
issues initially asserted by Brown L.L.P. as precluding arbitration were fully
litigated in both Texas and Georgia.  

            Based
on this record evidence we find a misnomer occurred and Brown L.L.P. can be
held liable on the judgment.  See, e.g., Adams, 124 S.W.2d at 841 (finding a misnamed defendant may be held
liable on a judgment); Dezso,
926 S.W.2d at 374 (finding sufficient evidence of misnomer based on pleadings
and citation); Hill Country, 773
S.W.2d at 640–41 (finding an invoice and bill of lading and fact that wrongly
named defendant had same address as appellant sufficient evidence to establish
misnomer). 

2.  Estoppel

            Lanier
also argues Brown L.L.P. should be estopped from
asserting that (1) Brown P.L.L.P. is not an existing entity; (2) Brown L.L.P.
is not a proper party; and (3) Brown L.L.P. is not liable on the judgment.  We agree. 
Lanier’s summary judgment evidence establishes that affirmative representations
were made by Charles Brown and on his behalf, as well as on behalf of the Brown
entities, in both the Georgia and Texas
proceedings.  Those representations
indicated Brown P.L.L.P. was the correct entity to be named as the judgment
debtor.  The Georgia court
issued judgment in the name of Brown P.L.L.P. based upon those representations.  Also, applying estoppel
principles under these circumstances serves judicial efficiency and the due
administration of justice. 

            Even where a party making a
collateral attack on a judgment can establish a recognized ground for the
attack, he may be barred by an affirmative defense, such as estoppel.  See
Caldwell v. Barnes, 975 S.W.2d 535, 536, 539 (Tex. 1998)
(applying equitable principles in case involving foreign judgment); Centre Equities, Inc. v. Tingley,
106 S.W.3d 143, 150 (Tex. App.—Austin 2003, no pet.) (applying doctrine of
collateral estoppel to foreign judgment); St. Clair-Urdaneta,
Inc. v. Marathon Oil Co., No. 05-96-00434-CV, 1999 WL 72202, at *6–7 (Tex.
App.—Dallas Feb. 12, 1999, no pet.) (not designated
for publication) (examining foreign judgment under
doctrine of judicial estoppel).[29]  When a party takes a position in a collateral
attack on a judgment that is contrary to its position in the suit underlying
the judgment, that party will be judicially estopped
to assert that the judgment is invalid.  See Mueller v. Banks, 332 S.W.2d 783,
786–87 (Tex. Civ. App.—San Antonio 1960, no writ); Lawrence v. Bradley, 295 S.W.2d 746, 749
(Tex. Civ. App.—Dallas 1956, no writ) (stating a
party risks losing the right to attack a void judgment, if the party’s conduct
has worked an estoppel). 

            Under the doctrine of
judicial estoppel, a party who has made a sworn
statement in a pleading, deposition, oral testimony, or affidavit in a judicial
proceeding is barred from maintaining a contrary position in a subsequent
proceeding.  In re Estate of Loveless, 64 S.W.3d 564, 578 (Tex. App.—Texarkana
2001, no pet.); DeWoody v. Rippley,
951 S.W.2d 935, 944 (Tex. App.—Fort Worth 1997, pet. dism’d
by agreement); see also St. Clair-Urdaneta, 1999 WL 72202, at *6–7.  The judicial estoppel
doctrine is not true estoppel at all, but arises from
“positive rules of procedure based on justice and public policy issues.”  Loveless,
64 S.W.3d at 578; DeWoody,
951 S.W.2d at 944.  In Mueller v. Banks, the court noted:

[Judicial estoppel] is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings
because the elements of reliance and injury essential to equitable estoppel need not be present.  Under the doctrine of judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped
merely by the fact of having alleged or admitted in his pleadings in a former
proceeding under oath the contrary to the assertion sought to be made. 

See Mueller, 332
S.W.2d at 787 (citations and internal quotations omitted). 

            Significantly,
the doctrine is intended to protect the integrity of the judicial system and to
prevent a party from “playing fast and loose” with the courts to suit the
party’s purposes.  Stewart v. Hardie,
978 S.W.2d 203, 208 (Tex. App.—Fort Worth 1998, pet. denied).  The doctrine is not intended to protect
litigants; instead, its purpose is to prevent intentional self-contradiction as
a method of gaining an unfair advantage. 
Id.  The elements of judicial estoppel
are (1) a sworn, prior inconsistent statement made in a prior judicial
proceeding; (2) the successful maintenance of the contrary position in the
prior action; (3) the absence of inadvertence, mistake, fraud, or duress in the
making of the prior statement; and (4) the statement was deliberate, clear, and
unequivocal.  DeWoody, 951
S.W.2d at 944.  Here, beginning
with its sworn petition filed in the county court action, Brown L.L.P.
unequivocally represented itself as the party involved in the dispute with
Lanier regarding the copy machine. 
Further, Charles Brown testified in that court that the Charles Brown
Law Firm was a “limited liability partnership,” and that he and the Charles
Brown Law Firm, P.L.L.C. were the only two principals involved in the partnership.  Thereafter, in the district court action,
Charles Brown[30]
averred that Lanier “contacted an employee of Charles Brown, 

 class=Section7>

P.L.L.P., d/b/a The Charles Brown Law Firm, Plaintiff,
for the purpose of placing a machine in Charles Brown, P.L.L.P. d/b/a The
Charles Brown Law Firm,” contradicting the earlier statement that Brown L.L.P.
was the entity involved.  Brown stated
further, “Charles Brown as authorized representative of Charles Brown,
P.L.L.C., the managing partner of Charles Brown, P.L.L.P. d/b/a The Charles
Brown Law Firm . . . .”  In fact,
throughout Brown’s petition, he referred to the P.L.L.P. entity as being the
party involved in the matter.  Likewise,
in his accompanying affidavit, Brown averred: “Charles Brown, P.L.L.P., The
Charles Brown Law Firm, d/b/a Charles Brown P.L.L.P. is a limited liability
partnership and I am the President of the managing partner Charles Brown
P.L.L.C.” Further, it was Brown P.L.L.P. that filed the Response to Lanier’s
Statement of Claims in the Georgia proceeding
and, in attached affidavits, both Brown and Dodson
represented the P.L.L.P. entity as the party involved.

            Thus,
Brown L.L.P. was represented as being a party to the dispute with Lanier, as
was Brown P.L.L.P. in both the Georgia
proceedings and in the Texas
proceedings.  Further, Brown P.L.L.P. was
represented as an existing entity.  These
representations are contrary to the position Brown L.L.P now asserts, that is,
Brown L.L.P. was not a party to the underlying actions and Brown P.L.L.P. is
not an existent entity and has never existed. 
That Brown P.L.L.P. was the entity named as the judgment debtor in the Georgia judgment
evidences Brown successfully maintained this contrary position in the
underlying proceedings.  Further, there
is no evidence in the record that these statements were made due to fraud or
duress.  Therefore, we find the elements
necessary for application of the judicial estoppel
doctrine are satisfied.

            Additionally,
pleadings in other actions which contain statements inconsistent with the
party’s present position can also be received as admissions.  Izaguirre v. Tex. Employers’ Ins. Ass’n, 749 S.W.2d 550, 555 (Tex. App.—Corpus Christi
1988, writ denied).  A judicial
admission results when a party makes a statement of fact which conclusively
disproves a right of recovery or defense currently asserted.  See
Richards v. Comm’n for Lawyer Discipline, 35 S.W.3d 243, 247 (Tex. App.—Houston [14th
Dist.] 2000, no pet.).  A judicial
admission must be (1) made in the course of a judicial proceeding; (2) contrary
to an essential fact for the party’s defense; (3) deliberate, clear, and
unequivocal; (4) related to a fact upon which judgment for the opposing party
could be based; and (5) the enforcement of the admission would be consistent
with public policy.  Id.  A judicial admission is conclusive on the
party making it; thus, it relieves his adversary from proving the fact admitted
to and further bars the party from disputing it.  Id.  Statements made by a party’s attorney also
qualify as judicial admissions.  See DeWoody,
951 S.W.2d at 935.  

            During
the confirmation hearing in the Georgia court,
counsel for the Brown entities stated unequivocally that Brown L.L.P. and Brown
P.L.L.P. were one and the same entity.  That
statement operates as a judicial admission and evidences that Brown P.L.L.P.
and Brown L.L.P. are in fact one and the same entity.  Further, many of the statements set forth
above in the discussion on judicial estoppel also
serve as judicial admissions.  Those
statements demonstrate Brown L.L.P. was a party to the underlying proceedings
and Brown P.L.L.P. was represented as the party liable on the judgment. The
statements were made during the course of the Georgia and Texas
proceedings and were relied on by the Georgia
court.  In addition, the statements are
contrary to Brown L.L.P.’s current position and
involve a fact essential to Brown L.L.P.’s current
defense.  Moreover, giving conclusive
effect to these statements is consistent with public policy.  Indeed, were we to deny the conclusiveness of
these statements, Brown L.L.P. would benefit from its lack of candor with the Texas and Georgia courts.  Accordingly,
we find that application of the judicial estoppel
doctrine is warranted under the facts of this case to protect the integrity of
the judicial system.  Further, we find
that statements made by Brown L.L.P. operate as judicial admissions, preventing
it from now disputing that it was not a party to the underlying proceedings.

3.  Brown L.L.P.’s
Special Appearance

            We
also reject Brown L.L.P.’s argument that it pleaded
misnomer in abatement by filing a special appearance in the Georgia
court.  Assuming without deciding that
Brown L.L.P.’s special appearance was a sufficient
“plea in abatement,” it did not specifically 

 class=Section8>

include the entity at issue, Brown
P.L.L.P.  Brown L.L.P.’s
special appearance listed the following respondents in the caption:  “The Charles Brown Law Firm, Charles W. R.
Brown, P.L.L.P., Charles Brown L.L.P., d/b/a The
Charles Brown Law Firm, Charles Brown P.C., Charles W. Brown, P.L.L.C., and
Jerry Dodson.”  In the body of the
document, the entities were referred to in the following manner: “The Charles
Brown Law Firm (‘Brown Law Firm’), Charles W. R., P.L.L.P. (‘Brown, PLLP’), . . . .”  It was
then stated in the text of the document, “The Brown Law Firm and Brown, PLLP
are not legal entities.”  According to
Brown L.L.P.’s argument, this served as a plea in
abatement, sufficiently apprising the court and the
parties of the misnomer.  We cannot
agree.  Given the number of Brown
entities referred to in the course of the Georgia and Texas proceedings, simply
stating that “Charles W. R. Brown P.L.L.P.” is not a legal entity did not serve
to sufficiently advise the court or the parties that Charles Brown, P.L.L.P.
d/b/a The Charles Brown Law Firm was a non-existent entity or that a misnomer
had occurred. 

            Moreover,
although Brown L.L.P. claims it was dismissed from the Georgia suit prior
to rendition of the judgment, it failed to provide evidence of this.  In the trial court, Brown L.L.P. furnished a
copy of Lanier’s motion to dismiss filed in the Georgia court and stated a copy
of the order approving the dismissal was attached; however, the record contains
no such order.  Thus, there is no
evidence indicating the Georgia court
approved the motion and no evidence Brown L.L.P. was in fact dismissed from the
Georgia suit.  See
Rosales v. Davis, 580 S.E.2d 662, 663 (Ga. Ct. App. 2003); Manning v. Robertson, 476 S.E.2d 889,
891 (Ga. Ct. App. 1996); see also Ga. Code Ann. § 9-11-21 (1966).  However, based on our findings of misnomer
and estoppel, even if the order of dismissal were
included in the record, we could not find that an order of dismissal would be
conclusive on the issue.

            In
sum, we find a misnomer occurred in the underlying judgment in naming Brown
P.L.L.P. as the judgment debtor. 
Further, Brown L.L.P. can be held liable on the judgment and is
judicially estopped from now asserting
otherwise.  Accordingly, we hold the
trial court properly granted Lanier’s summary cross-motion for summary judgment
and overrule Brown L.L.P.’s first issue.

 class=Section9>

C.  Brown L.L.P.’s
Summary Judgment Motion

            In
its second issue, Brown L.L.P. asserts the trial court erred in denying its
summary judgment motion.  In its motion,
Brown L.L.P. argued Brown P.L.L.P. did not exist, was not a party to the Texas
suit, and the Texas court lacked jurisdiction over Brown P.L.L.P.[31]   Brown L.L.P. also argued Lanier was
precluded from asserting a misnomer argument because the Georgia court denied
Lanier’s request to amend the judgment.[32]  A trial court should grant a defendant’s
summary judgment motion if the defendant disproves at least one essential
element of the plaintiff’s causes of action, or the defendant establishes all
the elements of an affirmative defense as a matter of law.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

1.  Enforcing a Foreign Judgment

            It
is well established that the final judgment of a sister state must be given the
same force and effect it would be given in the rendering state.  Markham v. Diversified Land & 

 class=Section10>

Exploration Co., 973 S.W.2d 437, 439 (Tex.
App.—Austin 1998, pet. denied). 
This recognition of foreign judgments is required under the Full Faith
and Credit Clause of the United States Constitution.  U.S. Const. art. IV, § 1; Markham, 973
S.W.2d at 439. 

            Texas recognizes
two methods of enforcing a foreign judgment: (1) filing the judgment in
accordance with the Uniform Enforcement of Foreign Judgments Act (“UEFJA”), and
(2) filing a common-law action to enforce the judgment.  Tex. Civ. Prac. & Rem. Code §§ 35.003, 35.008; see Brown’s Inc. v. Modern Welding Co., 54 S.W.3d 450, 453 (Tex.
App.—Corpus Christi 2001, no pet.).  

            In
this case, by seeking enforcement of the Georgia judgment
in the district court action, Lanier elected to pursue enforcement through a
common-law action.[33]  See Tex. Civ. Prac. & Rem.
Code § 35.008; Brown’s Inc., 54 S.W.3d at 453.  When a common-law action is pursued as the
method of enforcement, the proceeding has the same character as any other civil
proceeding; thus, the judgment creditor, as plaintiff, initiates the action,
the judgment debtor, as defendant, can assert his defenses, and an appealable judgment results.  See,
e.g., Wu v. Walnut Equip. Leasing Co.,
909 S.W.2d 273, 277–78 (Tex. App.—Houston [14th Dist.] 1995), rev’d on other grounds, 920 S.W.2d 285 (Tex. 1996); Moncrief v. Harvey, 805 S.W.2d 20, 22 (Tex.
App.—Dallas 1991, no writ). 

            Once the party seeking enforcement of a foreign judgment has
presented an authenticated judgment that appears to be a final and valid
judgment, the burden then shifts to the party resisting the judgment to
establish an exception to full faith and credit.  E.g.,
Mitchim v. Mitchim,
518 S.W.2d 362, 364 (Tex. 1975); Reading
& Bates Const. Co. v. Baker Energy Res. Corp., 976 S.W.2d 702, 713
(Tex. App.—Houston [1st Dist.] 1998, pet. denied); Myers v. Ribble, 796 S.W.2d 222, 224
(Tex. App.—Dallas 1990, no writ); First
Nat’l Bank of Libby, Montana v. Rector, 710 S.W.2d 100, 103 (Tex. App.—Austin 1986, writ ref’d n.r.e.); Roberts v.
Hodges, 401 S.W.2d 332, 334 (Tex. Civ.
App.—Amarillo 1966, writ ref’d n.r.e.).  Recognized exceptions to full faith and
credit requirements are (1) the judgment is interlocutory; (2) the judgment is
subject to modification under the law of the rendering state; (3) the rendering
state lacked jurisdiction; (4) the judgment was procured by extrinsic fraud;
and (5) limitations had expired.  Reading & Bates, 976
S.W.2d at 713.  

            A
defense asserted in a Texas court
against the enforcement of a foreign judgment is a collateral attack.  Cash Register Sales & Servs. of Houston, Inc.
v. Copelco Capital, Inc., 62 S.W.3d 278, 280 (Tex. App.—Houston [1st
Dist.] 2001, no pet.); Rector, 710 S.W.2d at 103.  In a collateral attack on a sister state’s
judgment, no defense that goes to the merits of the original controversy may be
raised.  Cash Register Sales & Servs., 62 S.W.3d at 281; Goodier v. Duncan, 651 S.W.2d 25, 27 (Tex. App.—Dallas 1983, writ ref’d n.r.e.) (concluding the merits of the underlying action, dealing with
an arbitration award, could not be addressed in an action to enforce the
judgment).  This is true for questions of
jurisdiction, if those issues were fully and fairly litigated and decided in
the sister court.  Mayhew v. Caprito,
794 S.W.2d 1, 2 (Tex. 1990).[34]  A collateral attack on a judgment is
successful only where the judgment is established as void.  A judgment is void only when it is apparent
the court rendering it lacked (1) jurisdiction over the parties or property;
(2) jurisdiction over the subject matter; (3) jurisdiction to enter the
particular judgment; or (4) the capacity to act as a court.  See Browning v. Placke, 698 S.W.2d 362,
363 (Tex. 1985); Woodfin
v. Coleman, 931 S.W.2d 383, 384–85
(Tex. App.—Austin 1996, writ denied). 




            Here, when
Lanier filed the properly authenticated judgment, valid and final on its face,
Lanier established a prima facie case against Brown P.L.L.P.[35]  In its summary judgment motion,
Brown L.L.P. then asserted a collateral attack on the Georgia judgment
and consequently, had the burden to prove the judgment was void.  See Freudenmann v. Clark Assocs., 599 S.W.2d 132, 134–35
(Tex. Civ. App.—Corpus Christi 1980, no writ) (noting
in summary judgment context, burden is on party challenging foreign
judgment).  

            We
have already disposed of Brown L.L.P.’s argument
regarding its dismissal from the Georgia suit.  In addition, based upon our finding of
misnomer and judicial estoppel, we must reject Brown L.L.P.’s assertion that it was not a party to the
underlying proceedings; inasmuch as Brown P.L.L.P. was a party, Brown L.L.P.
was also a party.  As previously noted,
Brown L.L.P. does not assert any arguments regarding service of process, but
instead contends it lacked the requisite minimum contacts with Georgia.  However, the evidence established Brown
L.L.P. admitted using the copy machine and made rental and maintenance payments
on the machine to Lanier’s Georgia
offices.  Also, Brown L.L.P. asserted
causes of action against Lanier based upon the copy machine and sought relief
from the arbitration award, albeit in a Texas
court.  Based upon this, we cannot say
that Brown L.L.P. was deprived of due process, particularly where the record
reflects it received notice of the Georgia proceeding
and chose to challenge those proceedings in Texas rather
than appearing in Georgia.  Thus, we conclude that there were sufficient
minimum contacts between Brown L.L.P., Georgia, and the litigation which
operate to satisfy the requirements of due process.  See Hill Country, 773 S.W.2d at 640 (finding sufficient minimum
contacts between misnamed defendant and foreign jurisdiction).

 class=Section11>

2.  Res Judicata

            Brown
L.L.P. also argues Lanier is precluded from asserting a misnomer argument in
the Texas
proceedings because Lanier sought to amend the Georgia judgment
to reflect Brown L.L.P. as the judgment debtor, but the Georgia court
denied Lanier’s request.[36]  Lanier did not appeal the court’s denial and
Brown L.L.P. argues Lanier is thus barred from requesting this relief by virtue
of collateral estoppel or res
judicata principles.

            Res judicata prevents relitigation of a claim or cause of action that has been
finally adjudicated in a prior suit between the same parties.  See Ga. Code Ann. § 9-12-40; Dickerson v. Dickerson, 545 S.E.2d 378, 380 (Ga. Ct. App. 2001);[37] Samedan Oil Corp. v. Louis Dreyfus Natural Gas
Corp., 52 S.W.3d 788, 794 (Tex. App.—Eastland 2001, pet. denied).  To establish res judicata, a party must show (1) a prior final judgment
rendered by a court of competent jurisdiction; (2) identity of parties or those
in privity with them; and (3) a second action based
on the same claims as were raised or could have been raised in the first
action.  See Doman v.
Stapleton, 568 S.E.2d 509, 513 (Ga. Ct. App. 2002); Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 269 (Tex. App.—Houston [14th Dist.] 2003, pet. filed).

            Like
the doctrine of res judicata,
collateral estoppel prevents a party from relitigating an issue that it previously litigated and
lost.  Quinney Elec., Inc. v. Kondos Entm’t, Inc., 988
S.W.2d 212, 213 (Tex. 1999) (per curiam).  Collateral estoppel
also requires identity of the parties or their privies, but does not require
identity of the claim, as long as the issue was determined in the previous
action.  Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Servs., 538 S.E.2d 746, 748 (Ga.
2000).  The elements of collateral estoppel are (1) an issue of fact or law was actually
litigated and determined by a valid judgment, and (2) that determination is
essential to the judgment in the first action. 
Dickerson, 545 S.E.2d at 813; see also Tanox,
105 S.W.3d at 269.  The issue decided in
the prior action must be identical to the issue in the pending action.  Gwinnett,
538 S.E.2d at 748; Tanox, 105 S.W.3d at 269.  The doctrine of collateral estoppel promotes judicial efficiency, protects parties
from multiple lawsuits, and prevents inconsistent judgments.  Rexrode v. Bazar, 937
S.W.2d 614, 616 (Tex. App.—Amarillo 1997, no pet.).  A prior adjudication will be given estoppel effect only if it was sufficiently deliberated and
firm.  Mower v. Boyer, 811 S.W.2d 560, 562 (Tex. 1991); see Blakely v. Couch, 200 S.E.2d 493,
496 (Ga. Ct. App. 1973).  

            Initially,
we note that judicial estoppel may be used to prevent
a party from asserting a res judicata
or collateral estoppel defense.  See Zipp Indus., Inc. v. Ranger Ins. Co.,
39 S.W.3d 658, 665 (Tex. App.—Amarillo 2001, no pet.). 
Here, as previously established,  because Brown P.L.L.P. was affirmatively
represented as the party to be named in the judgment, Brown L.L.P. is
judicially estopped from relying on any alleged
conclusive effects of the Georgia judgment
as to the party named.     

            Nevertheless,
we address Brown L.L.P.’s res
judicata and collateral estoppel
argument.  We note that inherent in Brown
L.L.P.’s contention is the conclusion that the
identity of the proper party to be named in the Georgia judgment
was fully and fairly litigated.  However,
the cause of action in the Georgia proceedings
involved claims regarding the copy machine; the issue of the proper party to be
named in the judgment was not “litigated.” 
See Fluor Daniel,
Inc. v. H.B. Zachry Co., 1 S.W.3d 166, 170 (Tex.
App.—Corpus Christi 1999, pet. denied). 
Indeed, the representations made by Brown and on behalf of the Brown
entities prevented the issue of misnomer from being fully litigated.  

            The
evidence establishes that the Georgia judgment
was rendered against Brown P.L.L.P. based upon representations made on behalf
of the Brown entities, indicating that Brown L.L.P. and Brown P.L.L.P. were one
and the same entity, and representations that Brown P.L.L.P. was the correct
entity to be named as judgment debtor. 
Only following entry of the Georgia judgment did Brown L.L.P. assert
that Brown P.L.L.P. was a non-existent entity, and indeed, had never existed,
thus raising the misnomer issue.  A
judgment in one suit will not operate as a bar to a subsequent suit based on
the same question between the same parties where, in the interval, facts have
changed or new facts have occurred which may alter the legal rights or
relations of the parties.  Hernandez v. Del Ray
Chemical Int’l, Inc., 56 S.W.3d 112, 116 (Tex.
App.—Houston [14th Dist] 2001, no writ). 
When Brown L.L.P. asserted Brown P.L.L.P. was a non-existent entity,
this was a “new fact” which altered the legal rights of the parties.  Prior to Lanier’s action to enforce the
judgment, Brown L.L.P. failed to raise the issue of misnomer or misidentification,
effectively avoiding litigation of the issue.[38]  See,
e.g., Blakely, 200 S.E.2d at 498
(finding issue not fully litigated); Mower,
811 S.W.2d at 562–63 (same).  

            The issue before this court,
and the trial court, is one of misnomer. 
Although in issuing the judgment the Georgia court
found that Brown P.L.L.P. was the judgment debtor, the misnomer issue had not
yet been raised.  There is no indication
in the record that the Georgia court heard argument on Lanier’s misnomer claim, nor any
indication the court heard evidence on the application of arbitration law to a
requested modification based on misnomer. 

            In sum, we cannot say the trial
court erred in denying Brown L.L.P.’s motion for
summary judgment, and accordingly, we overrule Brown L.L.P.’s
second issue.  

 

V.  Conclusion

            We
find Lanier established, as a matter of law, that a misnomer occurred in the Georgia
proceedings and Brown L.L.P. can be held liable on the judgment.  We also find that Brown L.L.P. is estopped from arguing it was not a party to those
proceedings and Brown P.L.L.P. is a non-existent entity.  Moreover, we find Brown L.L.P. failed to
present sufficient summary judgment evidence establishing it was entitled to
judgment as a matter of law. 
Accordingly, the judgment of the trial court is affirmed.   

 

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed January 6,
 2004.

Panel
consists of Justices Anderson, Seymore and Guzman.

 











            [1]  The Charles Brown Law Firm has been referred
to in various forms throughout the underlying proceedings.  These names include:  The Charles Brown Law Firm; Charles Brown,
P.L.L.P. d/b/a The Charles Brown Law Firm; Charles Brown, L.L.P. d/b/a The
Charles Brown Law Firm; Charles W. R. Brown Law Firm; and the Charles Brown Law
Firm, L.L.P.  As noted, this appeal
directly concerns Brown L.L.P., that is, Charles Brown, L.L.P. d/b/a The
Charles Brown Law Firm, and Brown P.L.L.P., or Charles Brown, P.L.L.P. d/b/a
The Charles Brown Law Firm.





            [2]  The Agreement listed The Charles Brown Law
Firm as the customer and listed the “Charles W. R. Brown Law Firm” as the
entity for shipping and billing purposes. 





            [3]  The parties disagree regarding the reason for
the machine’s removal; however, the resolution of that issue is not relevant to
this appeal.  





            [4]  In its application, Brown L.L.P. stated the
agreement at issue was “signed by an employee of Plaintiff.” 





            [5]  Other issues addressed at the hearing
included Dodson’s authority to sign on behalf of The Charles Brown Law Firm,
Brown L.L.P.’s claims regarding the quality of and
representations concerning the copy machine, and the issue of arbitrability.  





            [6]  Presumably “P.L.L.P.” stands for professional
limited liability partnership, however, this is not
stated in the record. 





            [7]  Brown renewed his application for injunction
before that court and on September
 10, 1999, Brown’s motion was heard.  The court denied the motion a second time and
ordered the parties to mediation.  The
mediation took place on September
 28, 1999, but the parties were unable to settle the dispute. 





            [8]  The record indicates that Charles W.R. Brown
and Charles Brown are one and the same person.





            [9]  Both Dodson’s and Brown’s previously filed
affidavits were attached to the Response. 






            [10]  According to Lanier’s uncontroverted
summary judgment evidence, in addition to those entities originally listed in
its Statement of Claims, Lanier also added the following parties as respondents
to the arbitration proceeding: Charles Brown Law Firm, L.L.P.; Charles W. R.
Brown, P.L.L.P.; Charles Brown P.L.L.P.; Charles Brown, L.L.P. d/b/a The
Charles Brown Law Firm; Charles Brown, P.C.; and Charles W. Brown,
P.L.L.C.  “The arbitrator, when
confronted with this list of defendants, and over [Lanier’s] strong objection .
. . , insisted upon having before her only the respondents that would be
obligated to pay if the award were in favor of Lanier. Charles Brown
affirmatively represented to the arbitrator, . . . that this entity was
‘Charles Brown P.L.L.P.’”





            [11]  All claims against Jerry Dodson,
individually, were denied.  





            [12]  The defendants also claimed the Georgia court
lacked jurisdiction over them and asserted other claims.





            [13]  Prior to this, on April 26, 2000, after filing its motion to
confirm, Lanier filed a “Dismissal Without Prejudice”
in the Georgia court,
dismissing without prejudice the following defendants: Charles Brown, L.L.P.
d/b/a The Charles Brown Law Firm, Charles Brown, P.C., Charles W. Brown,
P.L.L.C., and Jerry Dodson.  There is no Georgia court
order in the record approving the dismissal. 





            [14]  The judgment also decreed, in part, that
there was a valid and enforceable agreement between the parties, jurisdiction
and venue were proper in the Georgia court, and
the defendants had been properly served. 





            [15]  Although Lanier’s motion does not appear in
the record, there is an authenticated copy of the judgment contained in the
record.





            [16]  On March 26, 2001, Lanier filed a “Motion to Amend
to Correct Misnomer,” which was denied by the Georgia court by
order dated May 23,
 2001. 





            [17]  This latter argument was not briefed on
appeal and is therefore not before us. See
Tex. R. App. P. 38.1(h); Fields
v. City of Texas City, 864 S.W.2d 66, 68 (Tex. App.—Houston [14th Dist.]
1993, writ denied). 





            [18]  Brown L.L.P. did not raise the issue of
modification under arbitration law in the trial court and we, therefore, do not
consider it.  See Lopez v. Munoz, Hockema & Reed,
L.L.P., 22 S.W.3d 857, 862 (Tex. 2000)
(noting that on an appeal from summary judgment, issues not presented to the
trial court cannot be considered); see
also Loera v. Interstate Inv. Corp., 93 S.W.3d
224, 228 (Tex. App.—Houston [14th
Dist.] 2002, pet. denied).  Moreover, we
note that a review of the arbitration award is not before us in this
appeal.  The issue before us is
enforcement of a foreign judgment.  See Fluor Daniel, Inc. v. H.B. Zachry Co., 1
S.W.3d 166, 170 (Tex. App.—Corpus Christi 1999, pet. denied); Goodier v. Duncan, 651 S.W.2d 25, 27 (Tex.
App.—Dallas 1983, writ ref’d n.r.e.)
(noting action seeking full faith and credit of sister
state’s judgment based on arbitration award was new action).  Indeed, under the Federal Arbitration Act, a
judgment on an arbitration award “shall have the same force and effect, in all
respects, as, and be subject to all the provisions of law relating to, a
judgment in an action; and it may be enforced as if it had been rendered in an
action in the court in which it is entered.” 
9 U.S.C. § 13 (1982); see also Tanox, Inc. v. Akin, Gump, Strauss, Hauer
& Feld, L.L.P., 105 S.W.3d 244, 270 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (Fowler, J., concurring) (stating
judgment entered upon an arbitration award is final and as effective as any
judgment).  We limit our review to those
issues raised in the trial court regarding enforcement of the foreign judgment.





            [19]  See also
6 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice §§ 28:17 n.129, 28:25 (2d ed. 2000).  





            [20]  The laws of the state rendering a foreign
judgment determine its validity.  Bard v. Charles R. Myers Ins.
Agency, Inc., 839 S.W.2d 791, 795 (Tex. 1992).  However, if,
as in this case, a party has not pled and proved the laws of the foreign
jurisdiction, they are presumed to be the same as the laws of Texas.  Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759, 769 (Tex.
App.—Corpus Christi 1999, pet. denied); Ringer
v. TransAmerica Ins. Co., 650 S.W.2d 520, 523
(Tex. App.—Houston [14th Dist.] 1983, writ ref’d n.r.e).  Here,
we presume Georgia law and Texas law are
the same and analyze the issues presented under Texas law. 





            [21]  See
also Morrel v. Nationwide Mut.
Fire Ins. Co., 188 F.3d 218, 225 (4th Cir. 1999) (rejecting argument that
because judgment named entity other than that shown on application to vacate or
correct arbitration award, it was judgment against another entity, stating that
in having used the names interchangeably itself, the appellant was “somewhat
disingenuous” in its argument).    





            [22]  Also, during the hearing on Brown L.L.P.’s request for a temporary injunction against Lanier,
Charles Brown acknowledged that Brown L.L.P. was invoiced for the copier and
paid monthly rental and maintenance fees. 
There is evidence in the record indicating Brown P.L.L.P. also made
payments on the copier. 





            [23]  In his petition, Brown also referred to Brown
P.L.L.P. as a “non-party” to the suit. 





            [24]  Brown L.L.P.’s
assertion, that Brown P.L.L.P. is a non-existent entity, supports Lanier’s
misnomer argument because a misidentification necessarily involves two
separate, though similarly named entities. 





            [25]  Brown’s counsel noted that the business
entity had initially been designated a “P.L.L.P.,” but became an “L.L.P.”
because the Texas “rules”
had changed.  A corporate name change
does not affect the identity of the organization or its rights and
liabilities.  See Northern Natural Gas Co. v. Vanderburg,
785 S.W.2d 415, 421 (Tex. App.—Amarillo 1990, no writ); see also Zuniga v. Wooster Ladder Co., 119 S.W.3d 856, 862 (Tex.
App.—San Antonio 2003, no pet. h.).





            [26]  This fact distinguishes this case from those
finding a judgment unenforceable against a separate and distinct legal entity
because of due process concerns.  See, e.g., Mapco, Inc. v. Carter, 817 S.W.2d 686, 687 (Tex. 1991)
(finding a judgment unenforceable against a party not properly before the
court, even though the party had been referred to in the pleadings).  In this case, Brown L.L.P. had adequate
opportunity to litigate its claims in this matter and was a party to the Georgia
proceedings.  





            [27]  Brown L.L.P. asserts the Georgia court and
arbitration panel did not have personal jurisdiction over it because it was not
shown to have any contacts with Georgia and “the
only possible basis of jurisdiction would be the contract signed by
Dodson.”  We specifically address this
argument in a latter portion of the opinion. 






            [28]  During the confirmation proceeding, Lanier’s
attorney stated that “all of the Brown entities” had been served in the Georgia
proceedings. 





            [29]  See
also 5 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 29:27 (2d ed. 2000).  





            [30]  Charles Brown filed his original petition in
the Texas district
court in August 1999.  Brown L.L.P. filed
its original petition in that court in December of 1999.    





            [31]  Attached to Brown L.L.P.’s
summary judgment motion was Charles Brown’s affidavit, stating he had never
done business in the name of Brown P.L.L.P. 
However, as previously addressed in the estoppel
section, supra, Brown L.L.P. is estopped from asserting that Brown P.L.L.P. is a
non-existent entity.  See, e.g., Highway Contractors, Inc. v. West Tex. Equip. Co., 617 S.W.2d 791,
793–94 (Tex. Civ. App.—Amarillo 1981, no writ)
(applying judicial estoppel principles in summary
judgment context); see also Overstreet v.
Home Indem. Co., 669 S.W.2d 825, 827 (Tex.
App.—Dallas 1984) (stating that summary judgment evidence contradicting
judicial admission is incompetent evidence), rev’d on other grounds, 678 S.W.2d 916 (Tex. 1984) (per
curiam).    





            [32]  Brown L.L.P. also argues that neither the
arbitration award nor the Georgia judgment make any findings as to whether
Brown L.L.P. is a party to the contract; however, Brown L.L.P. fails to provide
any argument or authority in support of its contention that any such finding
was necessary.  Arbitrators are not
required to state the reason for their award or to make any findings of
fact.  United Steel Workers of Am. v. Enter. Wheel & Car
Corp., 363 U.S. 593, 598 (1960); Atlanta Gas Light
Co. v. Trinity Christian Methodist
Episcopal Church, 500 S.E.2d 374, 377 (Ga. Ct. App. 1998).  Also, the record does not indicate that Brown
L.L.P. requested the Georgia court make
any findings.  Under Georgia law, a
party must request that findings be made. 
See Ga. Code Ann. § 9-11-52(a), (c) (1970); Payson
v. Payson, 552 S.E.2d 839, 842 (Ga.
2001).  Further, Brown L.L.P. argues
there is no summary judgment evidence the contract was signed on its behalf;
however, we do not address this assertion because the issue was litigated in
the underlying proceedings and goes to the merits of the original
controversy.  See Cash Register Sales & Servs. of Houston, Inc. v. Copelco
Capital, Inc., 62 S.W.3d 278, 281 (Tex. App.—Houston [1st
Dist.] 2001, no pet.) (noting that no defense going to
the merits of the original controversy may be raised in collateral
attack).  





            [33]  There is no dispute between the parties that
Lanier pursued enforcement through a common-law action.





            [34]  Although recitals in the foreign judgment are
generally presumed valid, in an action to enforce a foreign judgment, a Texas court may
consider evidence that goes to the jurisdiction of the sister state court over
the parties or the subject matter.  See Johnson v. Johnson, 37 S.W.3d 523,
526–27 (Tex. App.—El Paso 2001, no pet.); see
Rector, 710 S.W.2d at 103; 5 Roy W. McDonald & Elaine A. Grafton
Carlson, Texas Civil Practice § 29:27 (2d ed. 2000). 





            [35]  It is unclear if Lanier initially requested
enforcement against Brown P.L.L.P. or Brown L.L.P. because Lanier’s motion to
domesticate is not contained in the record. 
Brown L.L.P. did not make any arguments regarding the facial validity of
the judgment in the trial court, nor any arguments
regarding its finality.  Regardless, even
if Brown L.L.P. had argued the judgment was not facially valid as against Brown
L.L.P., Lanier would have then had the opportunity—and the burden—to make a separate
showing that the judgment was valid and enforceable against Brown L.L.P.  See
Dear v. Russo, 973 S.W.2d 445, 446–47 (Tex.
App.—Dallas 1998, no pet.) (noting that appellant
failed to file facially final judgment and also failed to make separate showing
that the judgment was final, thus denying recognition under the UEFJA). 





            [36]  In support of its summary judgment motion,
Brown L.L.P. furnished a copy of Lanier’s “Motion to Amend to Correct Misnomer”
and the Georgia court’s
order denying the motion.  In its order,
the court noted Lanier failed to modify the award under federal arbitration
law.  However, as noted, because Brown
L.L.P. did not raise that issue in the trial court, we cannot reverse a summary
judgment on that basis.  See Lopez, 22 S.W.3d
at 862.  While it is true that
under the Federal Arbitration Act, a party has only a limited amount of time to
move to correct or modify an arbitration award, see 9 U.S.C. §§ 11–12, it is also true that a judgment entered on
an arbitration award is enforceable like any other judgment or decree.  See 9
U.S.C. § 13 (1982); Tanox, Inc., 105 S.W.3d at 270; see also Ga. Code Ann. § 9-9-15 (judgment
on arbitration award shall be enforced as any other judgment).  Further, an action to enforce a judgment is a
new and different cause of action.  See Fluor Daniel,
Inc. v. H.B. Zachry Co., 1 S.W.3d 166, 170 (Tex.
App.—Corpus Christi 1999, pet. denied); Moncrief, 805 S.W.2d at 22; Goodier, 651 S.W.2d at 27 (noting
action seeking full faith and credit of sister state judgment based on
arbitration award was new action); see
also Tex. Civ.
Prac. & Rem.
Code § 35.008.  Thus, even if the judgment was not subject to
modification under arbitration law, it is not exempt from those common-law
principles applicable to judgments. The Georgia court’s
order, denying Lanier’s motion to amend, is before this court only to the
extent Brown argues it acts as res judicata to Lanier’s claims.





            [37]  The preclusive effect of a judgment must be
determined according to the law of the jurisdiction issuing the initial judgment.  Purcell v. Bellinger, 940 S.W.2d 599, 601
(Tex. 1997).  Here, the laws
regarding res judicata and
collateral estoppel are essentially the same under
both Texas and Georgia law.





            [38]  We also note in asserting these estoppel principles, Brown L.L.P. had the burden to
establish that the parties in the underlying proceedings were the same or were
in privity. 
However, Brown L.L.P.’s assertions in the
trial court and on appeal are contrary to such a showing.